KEVIN E. FUSCH (SBN 255877)
PATRICIA H. LYON (SBN 126761)
FRENCH LYON TANG
A Professional Corporation
1550 Parkside Drive, Suite 250
Walnut Creek, CA 94596
Telephone: (415) 597-7816

Attorneys for Movant,
MEDALLION GOLD INC. and
MEDALLION SERVICING, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (OAKLAND DIVISION)

| | |
|---|---|
| In re:<br><br>PRIORITY ACQUISITIONS, INC.,<br><br>          Debtor. | Case No.: 23-41651-CN-7<br><br>R.S. No. PHL-201<br><br>Chapter 7<br><br>**INDEX OF EXHIBITS TO MOTION FOR *IN REM* RELIEF FROM THE AUTOMATIC STAY (Local Bankruptcy Rule 4001-1 and 9014-1(f)(2), 11 U.S.C. §362(d)(1), (d)(2) and (d)(4), and Bankruptcy Rule 4001)**<br><br><u>Hearing</u><br>Date: May 24, 2024<br>Time: 10:00 a.m.<br>Ctrm: 215<br>Place: 1300 Clay Street<br>      Oakland, California<br>\*\*Hearing to be conducted in person and by Telephone or Video Conference |

**MOVANT SUBMITS THE FOLLOWING INDEX OF EXHIBITS IN SUPPORT OF MOTION FOR *IN REM* RELIEF FROM THE AUTOMATIC STAY**

| | |
|---|---|
| Exhibit 1 | Note Secured by Deed of Trust dated February 25, 2016 |
| Exhibit 2 | Deed of Trust recorded on March 21, 2016 |
| Exhibit 3 | Note secured by Deed of Trust dated September 25, 2019 |
| Exhibit 4 | Deed of Trust recorded November 5, 2019 |

-1-

EXHIBITS LIST
CASE NO. 23-41651

| | | |
|---|---|---|
| 1 | Exhibit 5 | Notice of Default and Election to Sell Under Deed of Trust record on August 9, 2023, as Instrument No. 2023090110, Official Records, County of Alameda, CA |
| 2 | | |
| 3 | Exhibit 6_ | Notice of Trustee's Sale recorded on November 14, 2023, as Instrument No. 2023134272, Official Records, County of Alameda, California |
| 4 | | |
| 5 | Exhibit 7 | Notice of Chapter 7 Case (Docket No. 6.) |
| 6 | Exhibit 8 | Grant Deed from Priority Acquisitions, Inc., to Jeremy Musson, recorded December 14, 2023, as Document No. 2023146118, Official Records, Alameda, California, covering real property described as Assessor Parcel Nos. 084D-1250-022-03 and 084D-1250-022-2 (the Ewing Road Property"). |
| 7 | | |
| 8 | | |
| 9 | Exhibit 9 | Grant Deed from Priority Acquisitions, Inc., to Jeremy Musson, recorded December 14, 2023, as Document No. 2023146119, Official Records, Alameda, California, covering real property described as Assessor Parcel Nos. 084D-1250-022-03 and 084D-1250-022-2 (the Ewing Road Property"). |
| 10 | | |
| 11 | | |
| 12 | Exhibit 10 | Trustee's Sale Guaranty dated as of August 9, 2023, covering 4747 Ewing Road, Castro Valley California |
| 13 | | |
| 14 | Exhibit 11 | Redfin valuation for covering 4747 Ewing Road, Castro Valley California. |
| 15 | Exhibit 12 | Jeremy Ryan Musson's Schedule A/B filed on September 21, 2023 in *In re Jeremy Ryan* Musson, United States Northern District Bankruptcy Case No. 23-41036-CN-13, Docket No. 26 at p. 3 of 39. |
| 16 | | |
| 17 | Exhibit 13 | Copy of Alameda County secured property tax search for Parcel No. 84D-1250-22 (4747 Ewing Road, Castro Valley) conducted 05/08/24. |
| 18 | | |
| 19 | Exhibit 14 | Copy of Alameda County secured property tax search for Parcel No. 84D-1250-21-03 (4701 Ewing Road, Castro Valley) conducted 05/08/24. |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

-2-

EXHIBITS LIST
CASE NO. 23-41651

EXHIBIT "1"

## NOTE SECURED BY DEED OF TRUST
### (This Note Contains An Acceleration Clause)

Straight Note - Interest Only Installments
Orinda, California

$735,000.00

**Date: February 25, 2016**

In installments as herein stated, for value received, the undersigned, promise to pay to:

**Pensco Trust Company, Custodian fbo Jo Ann Lockyer, IRA as to an undivided 12.245% interest; Jo Ann Lockyer, as to an undivided 17.006% interest; Pensco Trust Company, Custodian fbo Dave Dold, IRA, as to an undivided 20.408% interest; David L. Dold, Trustee of the David Lawrence Dold Revocable Trust, as to an undivided 10.204% interest; Kenneth P. Marinai and Laura A. Marinai, Trustees of the Marinai Family Trust, as to an undivided 10.204% interest; Phillip T. Cantor, Trustee of the Phillip T. Cantor Living Trust, as to an undivided 4.082% interest; Nancy L. Rapp, Trustee of the Nancy L. Rapp Living Trust, as to an undivided 6.803% interest; Donna Ames-Heldfond, Trustee of the Heldfond Family Trust as to an undivided 8.163% interest; Geoffrey H. Saft and Claudia Saft, husband and wife, as to an undivided 4.082% interest; Lawrence M. Neal, Trustee of the Lawrence M. Neal Revocable Living Trust dated August 19, 2004, as to an undivided 6.803% interest**

at 1 NORTHWOOD DRIVE, SUITE 1, ORINDA, CA 94563, or other place that may be designated by Lender through written notice to the undersigned, the sum of:

**$735,000.00----------(SEVEN HUNDRED THIRTY-FIVE THOUSAND DOLLARS AND 00/100)**

with interest from the date of funding (which is March 14, 2016) on the unpaid principal balance outstanding from time to time at the rate of interest stated below, payable in interest only monthly installments in the amount stated below, due on the 14th of each month, beginning on April 14, 2016 and continuing monthly thereafter until maturity, March 14, 2021, at which time all sums of principal and interest then remaining unpaid shall be due and payable in full.

The rate of interest for the term of this promissory note shall be ELEVEN PER CENT (11%) per annum.

The monthly installments for the term of this promissory note shall be **$6,737.50**

Each payment shall be credited first to interest then due and payable and the remainder on principal and interest shall thereupon cease upon the principal so credited. Upon default in any payment of any installment, then the balance of this obligation shall become due immediately at the option of the Lender hereof. Principal and interest is payable in lawful money of the United States of America.

If this Note is not paid when due, the undersigned promises to pay, in addition to the principal and interest due under this note, all costs of collection and any reasonable attorney's fees incurred by the Lender thereof on account of such collection, whether or not suit is filed hereon. The undersigned consents to renewals, replacements and extensions of time for payment hereof before, at, or after maturity; consents to acceptance of security for this Note and waives demand, protest and any applicable statute of limitations.

PROMISSORY NOTE

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 4 of 85

If any installment due hereunder is delinquent more than 10 days, the undersigned agrees to pay a late charge on each such installment of 10% of the delinquent payment. All late payment charges are to be paid immediately upon demand.

In addition, if any balloon payment is delinquent more than 10 days, the undersigned agrees to pay a late charge equivalent to the maximum late charge which could be assessed on the largest single regular installment due under this note. This late charge on the balloon payment is to continue to be assessed for each subsequent period of time equal to the regular installment period under this note until the balloon payment and other fees, interest and charges due under this note are paid in full.

The undersigned and Lender agree that it would be difficult to determine the actual damages to the Beneficiary or Beneficiaries agent for the return of an unpaid check provided by undersigned. It is hereby agreed the undersigned will pay one per cent (1%) or $25.00, whichever is greater. Such amount is in addition to any late charge or default interest which may be applicable. This amount is in lieu of any statutory monetary penalty, if any. However, Lender does not waive any other rights that may be awarded under any statute.

The principal and accrued interest on this loan may be prepaid in whole or in part at any time without penalty.

The Note is secured by a Deed of Trust of even date herewith which contains the following provision:
In the event of sale, transfer, conveyance or alienation of said properties, or any part thereof, or any interest therein, whether voluntary or involuntary, Beneficiary shall have the right of acceleration, at its option, to declare the note secured by this Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by Beneficiary to one such transaction shall not constitute waiver of the right to require such consent in succeeding transactions.

THIS NOTE IS SUBJECT TO SECTION 2966 OF THE CIVIL CODE, WHICH PROVIDES THAT THE HOLDER OF THIS NOTE SHALL GIVE WRITTEN NOTICE TO THE TRUSTOR, OR HIS SUCCESSOR IN INTEREST, OF PRESCRIBED INFORMATION AT LEAST 90 AND NOT MORE THAN 150 DAYS BEFORE ANY BALLOON PAYMENT IS DUE.

**ANY INTEREST WHICH BECOMES DUE UNDER THIS NOTE WHICH REMAINS DUE FOR MORE THAN ONE MONTH SHALL ACCRUE INTEREST AT THE SAME RATE AND UPON THE SAME TERMS AS THE PRINCIPAL UNDER THIS NOTE. IF THIS NOTE IS IN DEFAULT FOR MORE THAN ONE MONTH THEN THE INTEREST RATE OF THIS NOTE SHALL BE INCREASED TO AN AMOUNT EQUAL TO THE INTEREST RATE THEN DUE AS STATED ON THE FIRST PAGE OF THIS NOTE PLUS FIVE PER CENT (5%). ANY PRINCIPAL BALANCE OUTSTANDING PAST THE DUE DATE OF THIS NOTE SHALL BEAR INTEREST EQUAL TO THE HIGHEST INTEREST RATE STATED IN THIS NOTE PLUS FIVE PER CENT (5%).**
Executed on _FEB 26_, 2016 by (the "Undersigned"):

Priority Acquisitions Inc., a California Corporation

By: JEREMY MUSSON
It's: APPOINTED OFFICER

PROMISSORY NOTE

EXHIBIT "2"

Recorded at the Request of
Old Republic Title Company
Castro Valley

Recording Requested By:
Medallion Servicing LLC
When Recorded Mail to:

Medallion Servicing LLC
1 Northwood Drive, Suite 1
Orinda, CA 94563

RECORDING REQUESTED BY
OLD REPUBLIC TITLE CO.

G-PRI005



2016066767    03/21/2016 09:53 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:           63 00



8    PGS



# DEED OF TRUST
## (WITH ABSOLUTE ASSIGNMENT OF RENTS RIDER)

This Deed of Trust is dated **February 25, 2016**
The **TRUSTOR** is Priority Acquisitions Inc., a California Corporation ("Trustor").
The Trustor's address is 16996 Grovenor Drive, Castro Valley, CA 94546
The **TRUSTEE** is Medallion Servicing LLC, a California Limited Liability Company ("Trustee").
The **BENEFICIARY** Pensco Trust Company, Custodian fbo Jo Ann Lockyer, IRA as to an undivided 12.245% interest; Jo Ann Lockyer, as to an undivided 17.006% interest; Pensco Trust Company, Custodian fbo Dave Dold, IRA, as to an undivided 20.408% interest; David L. Dold, Trustee of the David Lawrence Dold Revocable Trust, as to an undivided 10.204% interest; Kenneth P. Marinai and Laura A. Marinai, Trustees of the Marinai Family Trust, as to an undivided 10.204% interest; Phillip T. Cantor, Trustee of the Phillip T. Cantor Living Trust, as to an undivided 4.082% interest; Nancy L. Rapp, Trustee of the Nancy L. Rapp Living Trust, as to an undivided 6.803% interest; Donna Ames-Heldfond, Trustee of the Heldfond Family Trust as to an undivided 8.163% interest; Geoffrey H. Saft and Claudia Saft, husband and wife, as to an undivided 4.082% interest; Lawrence M. Neal, Trustee of the Lawrence M. Neal Revocable Living Trust dated August 19, 2004, as to an undivided 6.803% interest ("Beneficiary").

Trustor owes Beneficiary the principal sum of $735,000.00. This debt is evidenced by a **PROMISSORY NOTE** dated February 25, 2016 (the "Note").

This Deed of Trust secures to Beneficiary:
(1)     Performance of each agreement and covenant of Trustor incorporated by reference, contained in the Note or contained in this Deed of Trust;
(2)     The repayment of the debt evidenced by the Note, with interest, and all amounts which shall become due under the Note, and all extensions, modifications, or renewals of the Note;
(3)     The payment of all sums, with interest, advanced under any provision of this Deed of Trust.

As security for the performance of Trustor's obligations secured by this Deed of Trust, Trustor irrevocably GRANTS, TRANSFERS, AND ASSIGNS to Trustee, in Trust, with POWER OF SALE, that property in the State of California, City of Castro Valley, County of Alameda, (the "Property"), described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

DEED OF TRUST (VERSION 10/14/96) PAGE 1 OF 5

Together with all the improvements now or hereafter erected on the Property, all replacements, all additions, all easements, rights, rents, royalties, mineral, oil and gas rights, water rights and stock and all fixtures now or hereafter a part of the Property. All of the foregoing is referred to as the Property.

## ACCELERATION ON TRANSFER OR ENCUMBRANCE OF THE PROPERTY:

If as to any or all of Trustor's interest in the Property, Trustor sells, transfers, contracts to sell, gives an option to purchase, conveys, leases for a term exceeding 10 years, encumbers, or alienates the Property; or causes or allows the Property to be subject to a junior lien or encumbrance; or if any or all of the title of the Trustor is impaired or divested, whether voluntarily or involuntarily; or if title to the Property be subject to any lien or charge, voluntary or involuntary, contractual or statutory, without the written consent of Beneficiary being first had and obtained; then Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by this Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by Beneficiary to one such transaction shall not constitute waiver of the right to require such consent in succeeding transactions.

TO PROTECT the security of this Deed of Trust, and with respect to the Property described above, Trustor expressly makes each of all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth as follows:
(1)      GOOD REPAIR: To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to keep all buildings, structures and other improvements now or hereafter situated on the above described Property at all times entirely free of dry rot, fungus, rust, decay, termites, beetles, and any other destructive insects or elements; to pay when due all claims for labor performed and materials furnished therefore to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not to commit waste or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumeration's herein not excluding the general. Either Beneficiary or Trustee, or both, at any time during the continuation of the Deed of Trust, may enter upon and inspect the Property, provided such entry is reasonable as to time and manner.
(2)      HAZARD INSURANCE: To provide, maintain and deliver to Beneficiary hazard insurance, including, without limitation, insurance against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Beneficiary requires insurance. Insurance for personal injury claims is required. All insurance shall be satisfactory to Beneficiary and shall be for an amount at least equal to the amount secured by this Deed of Trust. Such insurance shall contain a provision for loss payable to Beneficiary and shall contain a standard mortgage clause. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice. Beneficiary shall have the right to hold all policies and renewals. Beneficiary may make proof of loss if not made promptly by Trustor. Trustor hereby assigns to Beneficiary the proceeds of any and all insurance policies covering the Property, whether or not that insurance is required by Beneficiary. Trustor shall pay all insurance premiums required herein including, without limitation, any insurance obtained by Beneficiary due to Trustor's failure to secure insurance. Insurance shall be required regardless of the loan amount as compared to the value of the Property.
(3)      LEGAL PROCEEDINGS: To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; to pay all costs, expenses and attorney's fees incurred by Beneficiary in any action or proceeding in which Beneficiary is named as a party which affects this Deed of Trust and/or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding instituted by

Case: 23-41651     Doc# 23-4     Filed: 05/09/24     Entered: 05/09/24 16:18:27     Page 8 of 85

Beneficiary or Trustee to protect or enforce the security of this Deed of Trust or the obligations secured hereby.

(4) TAXES AND LIENS: To pay before delinquency all taxes and assessments affecting the Property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or any part appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

(5) TRUSTOR'S FAILURE: Should Trustor fail to make any payments or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security thereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment or either appears to be prior or superior thereto; and in exercising any such powers, pay necessary expenses, employ counsel and pay counsel's reasonable fees.

(6) ADVANCES: To pay immediately and without demand all sums, including attorneys' fees, advanced or expended by Beneficiary or Trustee, with interest from the date of expenditure at the rate prescribed in the Note. Should any additional funds be advanced on any note secured by a Trust Deed now of record, or should any change be made in the time or manner of paying such note, or should any other action be taken by the undersigned with respect to such note whereby the security herein provided for shall be impaired in any manner whatsoever, then the Note secured hereby shall, at the option of the Beneficiary, immediately become due and payable. All advances and expenditures incurred by Beneficiary and/or trustee shall be added to the amount due under the Note and shall accrue interest at the rate of interest under the Note.

(7) CONDEMNATION: Any award of damages or sums received in settlement in connection with any condemnation for public use of or any injury to the Property or any part thereof from any cause, is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8) LEASEHOLD: If the security for this Deed of Trust is a leasehold estate, Trustor agrees not to amend, change or modify his leasehold interest, or any of the terms thereof, or agree to do so, without the written consent of the Beneficiary being first obtained. In the event of a violation of this provision, Beneficiary shall have the right, at its option, to declare all sums secured hereby immediately due and payable.

(9) PAYMENTS: By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

Notwithstanding any provision herein or in the Note secured hereby to the contrary, Beneficiary or Trustee shall have the absolute right to direct manner, order and amount in which payments shall be applied upon or allocated among the various items composing Trustor's indebtedness secured hereby.

In the event of default in the payment of any of the moneys to be paid under the terms of the Note secured hereby or in the performance of any of the covenants and obligations of this Deed of Trust, then any funds in the possession of the Beneficiary, or other credits to which the Trustor would otherwise be entitled may, at the option of the Beneficiary, be applied to the payment of any obligation secured hereby in such order as the Beneficiary may, in its sole discretion determine.

(10) POWER OF TRUSTEE: At any time or from time to time, without liability therefore and without notice upon written request of Beneficiary and presentation of this Deed and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect the Property or the title thereto, or purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee.

(11) RECONVEYANCE: Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and the Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as the "person or persons legally entitled thereto". The Trustee may destroy the Note, this Deed of Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance. Trustor shall pay the Trustee's fee for issuance of a reconveyance which shall be $65.00 or the maximum amount allowed by law, whichever is greater.

(12) MISCELLANEOUS: The Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs,

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 9 of 85

legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner or holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, draperies and drapery rods, shrubs, water tanks, plumbing, machinery, air conditions, ducts, and the like.

(13)    TRUST:  Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(14)    STATEMENTS:  Trustor agrees to pay Beneficiary or his agent, the maximum legal charge for each statement regarding the Trust Deed obligation herein.  A statement includes but is not limited to a Beneficiary Statement, Credit Statement, Verification of Mortgage and any statement evidencing the debt.

(15)    PARTIAL PAYMENT:  Acceptance by Beneficiary of a partial payment on account, after Notice of Default has been recorded, shall not be construed as curing the default nor as a waiver of past or future delinquencies.

(16)    DEFAULT AND FORECLOSURE:  Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record.  Trustee shall be entitled to rely upon the correctness of such notice.  Beneficiary also shall deposit with Trustee this Deed, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of such Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which the Property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the Property to be sold, but without any covenant or warranty, expressed or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person including the Trustor, Trustee, or Beneficiary as hereinafter defined may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

(17)    SUBSTITUTION OF TRUSTEE:  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.

Such instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.  If Notice of Default shall have been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee shall have been paid to such Trustee, who shall endorse receipt thereof upon such instrument of substitution.  The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution provided by law.

(18)    CC&R'S:  If the security under this Deed of Trust is a condominium or a community apartment or planned development project, Trustor agrees to perform each and every obligation of the owner of such condominium or interest in such project under the declaration of covenants, conditions and restrictions or bylaws or regulations pertaining to such condominium or project.  Upon the request of Beneficiary, Trustor agrees to enforce against other owners in such condominium or project each and every obligation to be performed by them, if the same have not been performed or if valid legal steps have not been taken to enforce such performance within ninety (90) days after such request is made.

(19)    COVENANTS AND REPRESENTATIONS BY TRUSTOR:  Trustor covenants and represents that

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 10 of 85

Trustor is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for matters disclosed in writing to Beneficiary. Trustor covenants and represents to Beneficiary that Trustor has provided written disclosure to Beneficiary of all bankruptcy petitions which Trustor has filed at any time and that Trustor is not a debtor under any bankruptcy. In the event that Trustor has filed a petition in bankruptcy or files a petition in bankruptcy at any time prior to the perfection of a secured lien evidenced by this Deed of Trust against the Property, then upon execution of this Deed of Trust Trustor transfers title to the Property to Beneficiary and such transfer shall be deemed a transfer under Bankruptcy Code Section 549.

IT IS AGREED BY THE UNDERSIGNED TRUSTOR THAT THE ATTACHED "ABSOLUTE ASSIGNMENT OF RENTS RIDER" IS INCORPORATED HERETO AND IS MADE A PART HEREOF.

This undersigned Trustor(s), requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

TRUSTOR:                                                TRUSTOR:

**Priority Acquisitions Inc., a California Corporation**

By ~~Jeremy Musson~~
It's: APPOINTED OFFICER

_____

A notary public or other officer completing this certificate verifies only the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

_____

State of California, County of _Alameda_
On _Feb. 26, 2016_, 2016 before me, _Yesenia Moncada_
(Notary Public) personally appeared _Jeremy Musson_
_____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this deed of trust and acknowledged to me that he/she/they executed this deed of trust in his/her/their authorized capacity, and that by his/her/their signature on this deed of trust the person, or the entity upon behalf of which the person acted, executed this Deed of Trust.

I Certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary's Signature

YESENIA MONCADA
Commission # 2114082
Notary Public - California
Alameda County
My Comm. Expires Jun 5, 2019

This ABSOLUTE ASSIGNMENT OF RENTS is dated February 25, 2016
The ASSIGNOR is: by **Priority Acquisitions Inc.,** a California Corporation ("Assignor" (also known as Trustor under the Deed of Trust of same date of which this document is a rider thereto) The ASSIGNEE is: Pensco Trust Company, Custodian fbo Jo Ann Lockyer, IRA as to an undivided 12.245% interest; Jo Ann Lockyer, as to an undivided 17.006% interest; Pensco Trust Company, Custodian fbo Dave Dold, IRA, as to an undivided 20.408% interest; David L. Dold, Trustee of the David Lawrence Dold Revocable Trust, as to an undivided 10.204% interest; Kenneth P. Marinai and Laura A. Marinai, Trustees of the Marinai Family Trust, as to an undivided 10.204% interest; Phillip T. Cantor, Trustee of the Phillip T. Cantor Living Trust, as to an undivided 4.082% interest; Nancy L. Rapp, Trustee of the Nancy L. Rapp Living Trust, as to an undivided 6.803% interest; Donna Ames-Heldfond, Trustee of the Heldfond Family Trust as to an undivided 8.163% interest; Geoffrey H. Saft and Claudia Saft, husband and wife, as to an undivided 4.082% interest; Lawrence M. Neal, Trustee of the Lawrence M. Neal Revocable Living Trust dated August 19, 2004, as to an undivided 6.803% interest (Assignee") (also known as Beneficiary under the Deed of Trust of same date of which this document is a rider thereto) hereby agree to the following:

A. Assignor is the owner of that certain real property (the "Property" hereinafter) in the City of Castro Valley, County of Alameda, State of California described as:

## SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

B. Assignor, as Trustor, has executed a Deed of Trust in favor of Assignee, as Beneficiary, to secure a loan made by Assignee to Assignor. Said Deed of Trust incorporates this document by reference.

NOW THEREFORE, FOR VALUABLE CONSIDERATION AND AS ADDITIONAL SECURITY FOR THE OBLIGATIONS SECURED BY SUCH DEED OF TRUST, Assignor agrees as follows:

1. ASSIGNMENT. Assignor absolutely grants, transfers and assigns to Assignee all rents, issues, receipts, revenues, payments, charges and profits on the Property and any other sums derived from the Property including revenue obtained by a business or establishment located on the Property, including, without limitation, hotel revenue, boarding house revenues and convalescent care revenues, as well as Assignor's interest in all leases, oral or written, now in effect or hereinafter entered into concerning the Property (collectively referred to as "Rents"). This assignment is a present transfer in accordance with California Civil Code Section 2938.

2. RIGHT TO COLLECT. Assignee grants Assignor a license to collect all Rents from the Property only for so long as Assignor is not in default under the terms of the Deed of Trust. Such license shall terminate immediately, without notice, if a default occurs under the Deed of Trust. All Rents collected by Assignor, and/or any successor of Assignor, whether by operation of law, voluntarily or involuntarily, and/or a trustee in bankruptcy or a receiver are subject to the provisions of this Assignment of Rents. Assignor shall have no interest in the Rents prior to Lender's written transfer of any interest in the Rents.

3. DEFAULT. This assignment is perfected as of the date of recordation in accordance with California Civil Code Section 2938 and Assignee is entitled to Rents although Assignor or any other entity is in possession of the Property. In the event of a default by Assignor under the terms of the Deed of Trust, Assignee shall be entitled to accelerate all sums due under the loan secured said Deed of Trust in accordance with the terms thereof and is authorized to enter into and upon the Property, by itself or

Case: 23-41651   Doc# 23-4   Filed: 05/09/24   Entered: 05/09/24 16:18:27   Page 12 of 85

through an agent, for the purpose of collecting all Rents from the Property. In such event Assignee may, in its sole discretion, take and hold possession of the Property, operate and manage the Property, enter the Property to collect Rents, and take such other action as it may deem necessary to protect its security interest in the Property and its Rents. Assignor appoints Assignee its true, lawful and irrevocable attorney to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of the Assignor or in the name of the Assignee, for all Rents. Assignee is not required to obtain court approval to enter the property nor to collect the Rents.

4. OTHER REMEDIES. In addition to the rights set forth in paragraph 3 above, Assignee may exercise any other remedy it has at law or pursuant to the terms of the Deed of Trust. Without in any way limiting the foregoing, Assignee shall have the right, in its sole discretion, to seek the appointment of a receiver to take possession of the property, manage same, and collect the Rents on behalf of Assignee.

5. ADVANCE RENTS. Assignor agrees not to collect the Rents in advance of the time when they shall become due without the prior written consent of Assignee.

6. HOLD HARMLESS. Assignee does not assume any of the Assignor's obligations under any lease or any other agreement assigned hereunder, and Assignor agrees to keep and perform all obligations thereunder and to save Assignee harmless from the consequences of any failure to do so.

7. ASSIGNMENT PROHIBITED. Assignor agrees that it will not assign any interest in any lease, or any other agreement to pay any Rents assigned hereunder; and that notice of this Assignment may be given to any lessee or party to any such agreement at any time at Assignee's option.

8. MISCELLANEOUS. This Assignment is intended by Assignor and Assignee to create an absolute assignment to Assignee, rather than an assignment for security purposes only. Any sums collected by or on behalf of Assignee pursuant to the provisions of their Assignment shall be applied first to the payment of any costs incurred for management of the property and collection of rents (including, but not limited to receiver's fees, premiums on receiver's bonds and reasonable attorney's fees), and then to other sums secured by the Deed of Trust. All notices, requests, demands and other communications hereunder shall be deemed to have been duly given if delivered in person or by United States mail, certified or registered, return receipt requested, or otherwise actually delivered to the corresponding notice addresses listed below. Assignor and Assignee agree that any Rents collected pursuant to this Assignment of Rents shall not constitute and "action" under California Civil Code Section 726 whether the Rents are collected directly by Assignee and/or by Assignor or its successor and/or by a receiver or trustee in bankruptcy. Assignor and its successors agree not to claim in any manner that the receipt of Rents by Assignee is an "action" under California Civil Code Section 726. Assignor represents that the Rents assigned herein have not been assigned to any other entity.

Notice Address for Assignor is as stated in the deed of trust to which this Assignment of Rents is attached.

Priority Acquisitions Inc., a California Corporation

By: JEREMY MUSSON

It's: APPOINTED OFFICER

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 13 of 85

# EXHIBIT A

The land referred to is situated in the unincorporated area of the County of Alameda, State of California, and is described as follows:

Portion of the land shown on the Map of "Record of Survey, Portion of Elizabeth G. Parsons Estate," filed January 11, 1946, in Book 2 of Licensed Surveys, Pages 16, 17 and 18, described as follows:

Beginning at a point on the center line of Ewing Road distant thereon North 2° 25' 52" West 256 feet from the center line of Parsons Road, as said roads are shown on said Map; and running thence along the center line of said Ewing Road North 2° 25' 52" West 105.12 feet, and Northwesterly tangent with the last named course on a curve to the left with a radius of 400 feet, 15 to the true point of beginning; thence continuing along said course, 109.88 feet; thence South 68° 40' 45" West 581.33 feet; thence South 40° 13' East 35 feet; and thence North 76° 24' 45" East 558.18 feet to the true point of beginning.

APN: 084D-1250-022

EXHIBIT "3"

# NOTE SECURED BY DEED OF TRUST
## (This Note Contains An Acceleration Clause)

Straight Note - Interest Only Installments
Brentwood, California

**Date: September 25, 2019**

**$420,000.00**

In installments as herein stated, for value received, the undersigned, promise to pay to:

**Medallion Gold Inc., a California Corporation as to an undivided 71.429% interest; IRA Services Trust Company, Custodian FBO Brenda Diles, IRA as to an undivided 10.714% interest; James E. Kroetch, Trustee of the James E. Kroetch Revocable Living Trust dated January 1, 2015, as to an undivided 7.143% interest; David L. Dold, Trustee of the David Lawrence Dold Revocable Trust, as to an undivided 10.714% interest**

at 131 SAND CREEK ROAD, SUITE B, BRENTWOOD, CA 94513, or other place that may be designated by Lender through written notice to the undersigned, the sum of:

**$420,000.00----------(FOUR HUNDRED TWENTY THOUSAND DOLLARS AND 00/100)**

with interest from the date of funding (which is November 1, 2019) on the unpaid principal balance outstanding from time to time at the rate of interest stated below, payable in interest only monthly installments in the amount stated below, due on the 1st of each month, beginning on December 1, 2019 and continuing monthly thereafter until maturity, November 1, 2024, at which time all sums of principal and interest then remaining unpaid shall be due and payable in full.

The rate of interest for the term of this promissory note shall be ELEVEN PER CENT (11%) per annum. The monthly installments for the term of this promissory note shall be **$3,850.00**

Each payment shall be credited first to interest then due and payable and the remainder on principal and interest shall thereupon cease upon the principal so credited. Upon default in any payment of any installment, then the balance of this obligation shall become due immediately at the option of the Lender hereof. Principal and interest is payable in lawful money of the United States of America.
If this Note is not paid when due, the undersigned promises to pay, in addition to the principal and interest due under this note, all costs of collection and any reasonable attorney's fees incurred by the Lender thereof on account of such collection, whether or not suit is filed hereon. The undersigned consents to renewals, replacements and extensions of time for payment hereof before, at, or after maturity; consents to acceptance of security for this Note and waives demand, protest and any applicable statute of limitations.

If any installment due hereunder is delinquent more than 10 days, the undersigned agrees to pay a late charge on each such installment of 10% of the delinquent payment. All late payment charges are to be paid immediately upon demand.

In addition, if any balloon payment is delinquent more than 10 days, the undersigned agrees to pay a late charge equivalent to the maximum late charge which could be assessed on the largest single regular installment due under this note. This late charge on the balloon payment is to continue to be assessed for each subsequent period of time equal to the regular installment period under this note until the balloon payment and other fees, interest and charges due under this note are paid in full.
The undersigned and Lender agree that it would be difficult to determine the actual damages to the Beneficiary or Beneficiaries agent for the return of an unpaid check provided by undersigned. It is hereby agreed the undersigned will pay one per cent (1%) or $25.00, whichever is greater. Such amount is in

PROMISSORY NOTE

addition to any late charge or default interest which may be applicable. This amount is in lieu of any statutory monetary penalty, if any. However, Lender does not waive any other rights that may be awarded under any statute.

Incorporated into and made a part of this Note is a Loan Agreement dated September 25, 2019 executed by Payor, Payee and Medallion Gold Inc., a California Corporation.

The principal and accrued interest on this loan may be prepaid in whole or in part at any time without penalty.

The Note is secured by a Deed of Trust of even date herewith which contains the following provision: In the event of sale, transfer, conveyance or alienation of said properties, or any part thereof, or any interest therein, whether voluntary or involuntary, Beneficiary shall have the right of acceleration, at its option, to declare the note secured by this Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by Beneficiary to one such transaction shall not constitute waiver of the right to require such consent in succeeding transactions.

THIS NOTE IS SUBJECT TO SECTION 2966 OF THE CIVIL CODE, WHICH PROVIDES THAT THE HOLDER OF THIS NOTE SHALL GIVE WRITTEN NOTICE TO THE TRUSTOR, OR HIS SUCCESSOR IN INTEREST, OF PRESCRIBED INFORMATION AT LEAST 90 AND NOT MORE THAN 150 DAYS BEFORE ANY BALLOON PAYMENT IS DUE.

ANY INTEREST WHICH BECOMES DUE UNDER THIS NOTE WHICH REMAINS DUE FOR MORE THAN ONE MONTH SHALL ACCRUE INTEREST AT THE SAME RATE AND UPON THE SAME TERMS AS THE PRINCIPAL UNDER THIS NOTE. IF THIS NOTE IS IN DEFAULT FOR MORE THAN ONE MONTH THEN THE INTEREST RATE OF THIS NOTE SHALL BE INCREASED TO AN AMOUNT EQUAL TO THE INTEREST RATE THEN DUE AS STATED ON THE FIRST PAGE OF THIS NOTE PLUS FIVE PER CENT (5%). ANY PRINCIPAL BALANCE OUTSTANDING PAST THE DUE DATE OF THIS NOTE SHALL BEAR INTEREST EQUAL TO THE HIGHEST INTEREST RATE STATED IN THIS NOTE PLUS FIVE PER CENT (5%).

Executed on _OCT: 9TH_, 2019 by (the "Undersigned"):


Priority Acquisitions, Inc., a California Corporation

By _JEREMY MUSSON_                    _____

It's: _OFFICER_

PAGE 2 OF 2

PROMISSORY NOTE

EXHIBIT "4"

Recording Requested By:
**Medallion Servicing LLC**
When Recorded Mail to:

Medallion Servicing LLC
131 Sand Creek Road, Suite B
Brentwood, CA 94513



2019225837    11/05/2019 11:25 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK
RECORDING FEE:    114.00



6    PGS

G-PRI011
APN: 084D-1250-021-03    4701 Ewing Road, Castro Valley, CA 94546
APN: 084D-1250-022    4747 Ewing Road, Castro Valley, CA 94546

# DEED OF TRUST
## (WITH ABSOLUTE ASSIGNMENT OF RENTS RIDER)

This Deed of Trust is dated **September 25, 2019**
The **TRUSTOR** is **Priority Acquisitions, Inc., a California Corporation** ("Trustor").
The Trustor's address is 16996 Grovenor Drive, Castro Valley, CA 94546
The **TRUSTEE** is Medallion Servicing LLC, a California Limited Liability Company ("Trustee").
The **BENEFICIARY** is Medallion Gold Inc., a California Corporation as to an undivided 71.429% interest; IRA Services Trust Company, Custodian FBO Brenda Diles, IRA as to an undivided 10.714% interest; James E. Kroetch, Trustee of the James E. Kroetch Revocable Living Trust dated January 1, 2015, as to an undivided 7.143% interest; David L. Dold, Trustee of the David Lawrence Dold Revocable Trust, as to an undivided 10.714% interest ("Beneficiary").

Trustor owes Beneficiary the principal sum of **$420,000.00**. This debt is evidenced by a **PROMISSORY NOTE** dated September 25, 2019 (the "Note").

This Deed of Trust secures to Beneficiary:
(1)     Performance of each agreement and covenant of Trustor incorporated by reference, contained in the Note or contained in this Deed of Trust;
(2)     The repayment of the debt evidenced by the Note, with interest, and all amounts which shall become due under the Note, and all extensions, modifications, or renewals of the Note;
(3)     The payment of all sums, with interest, advanced under any provision of this Deed of Trust.
(4)     The provision of the Loan Agreement dated September 25, 2019
As security for the performance of Trustor's obligations secured by this Deed of Trust, Trustor irrevocably GRANTS, TRANSFERS, AND ASSIGNS to Trustee, in Trust, with POWER OF SALE, that property in the State of California, Unincorporated Area, County of Alameda, (the "Property"), described as follows:

## SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Together with all the improvements now or hereafter erected on the Property, all replacements, all additions, all easements, rights, rents, royalties, mineral, oil and gas rights, water rights and stock and all fixtures now or hereafter a part of the Property. All of the foregoing is referred to

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 19 of 85

## ACCELERATION ON TRANSFER OR ENCUMBRANCE OF THE PROPERTY:

If as to any or all of Trustor's interest in the Property, Trustor sells, transfers, contracts to sell, gives an option to purchase, conveys, leases for a term exceeding 10 years, encumbers, or alienates the Property; or causes or allows the Property to be subject to a junior lien or encumbrance; or if any or all of the title of the Trustor is impaired or divested, whether voluntarily or involuntarily; or if title to the Property be subject to any lien or charge, voluntary or involuntary, contractual or statutory, without the written consent of Beneficiary being first had and obtained; then Beneficiary shall have the right of acceleration, at its option, to declare the Note secured by this Deed of Trust, irrespective of the maturity date expressed therein, and without demand or notice, immediately due and payable. No waiver of this right shall be effective unless it is in writing. Consent by Beneficiary to one such transaction shall not constitute waiver of the right to require such consent in succeeding transactions.

TO PROTECT the security of this Deed of Trust, and with respect to the Property described above, Trustor expressly makes each of all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth as follows:

(1)     GOOD REPAIR:  To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to keep all buildings, structures and other improvements now or hereafter situated on the above described Property at all times entirely free of dry rot, fungus, rust, decay, termites, beetles, and any other destructive insects or elements; to pay when due all claims for labor performed and materials furnished therefore to comply with all laws affecting the Property or requiring any alterations or improvements to be made thereon; not to commit waste or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune, and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumeration's herein not excluding the general. Either Beneficiary or Trustee, or both, at any time during the continuation of the Deed of Trust, may enter upon and inspect the Property, provided such entry is reasonable as to time and manner.

(2)     HAZARD INSURANCE:  To provide, maintain and deliver to Beneficiary hazard insurance, including, without limitation, insurance against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Beneficiary requires insurance.  Insurance for personal injury claims is required.  All insurance shall be satisfactory to Beneficiary and shall be for an amount at least equal to the amount secured by this Deed of Trust.  Such insurance shall contain a provision for loss payable to Beneficiary and shall contain a standard mortgage clause. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.  Beneficiary shall have the right to hold all policies and renewals.  Beneficiary may make proof of loss if not made promptly by Trustor. Trustor hereby assigns to Beneficiary the proceeds of any and all insurance policies covering the Property, whether or not that insurance is required by Beneficiary.  Trustor shall pay all insurance premiums required herein including, without limitation, any insurance obtained by Beneficiary due to Trustor's failure to secure insurance. Insurance shall be required regardless of the loan amount as compared to the value of the Property.

(3)     LEGAL PROCEEDINGS:  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; to pay all costs, expenses and attorney's fees incurred by Beneficiary in any action or proceeding in which Beneficiary is named as a party which affects this Deed of Trust and/or the rights or powers of the Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding instituted by Beneficiary or Trustee to protect and or enforce the security of this Deed of Trust or the obligations secured hereby.

(4)     TAXES AND LIENS:  To pay before delinquency all taxes and assessments affecting the Property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or any part appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

(5)     TRUSTOR'S FAILURE:  Should Trustor fail to make any payments or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent

Case: 23-41651     Doc# 23-4     Filed: 05/09/24     Entered: 05/09/24 16:18:27     Page 20 of 85

as either may deem necessary to protect the security thereof, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment or either appears to be prior or superior thereto; and in exercising any such powers, pay necessary expenses, employ counsel and pay counsel's reasonable fees.

(6)    ADVANCES: To pay immediately and without demand all sums, including attorneys' fees, advanced or expended by Beneficiary or Trustee, with interest from the date of expenditure at the rate prescribed in the Note. Should any additional funds be advanced on any note secured by a Trust Deed now of record, or should any change be made in the time or manner of paying such note, or should any other action be taken by the undersigned with respect to such note whereby the security herein provided for shall be impaired in any manner whatsoever, then the Note secured hereby shall, at the option of the Beneficiary, immediately become due and payable. All advances and expenditures incurred by Beneficiary and/or trustee shall be added to the amount due under the Note and shall accrue interest at the rate of interest under the Note.

(7)    CONDEMNATION: Any award of damages or sums received in settlement in connection with any condemnation for public use of or any injury to the Property or any part thereof from any cause, is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8)    LEASEHOLD: If the security for this Deed of Trust is a leasehold estate, Trustor agrees not to amend, change or modify his leasehold interest, or any of the terms thereof, or agree to do so, without the written consent of the Beneficiary being first obtained. In the event of a violation of this provision, Beneficiary shall have the right, at its option, to declare all sums secured hereby immediately due and payable.

(9)    PAYMENTS: By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

Notwithstanding any provision herein or in the Note secured hereby to the contrary, Beneficiary or Trustee shall have the absolute right to direct manner, order and amount in which payments shall be applied upon or allocated among the various items composing Trustor's indebtedness secured hereby.

In the event of default in the payment of any of the moneys to be paid under the terms of the Note secured hereby or in the performance of any of the covenants and obligations of this Deed of Trust, then any funds in the possession of the Beneficiary, or other credits to which the Trustor would otherwise be entitled may, at the option of the Beneficiary, be applied to the payment of any obligation secured hereby in such order as the Beneficiary may, in its sole discretion determine.

(10)    POWER OF TRUSTEE: At any time or from time to time, without liability therefore and without notice upon written request of Beneficiary and presentation of this Deed and the Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of the Property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect the Property or the title thereto, or purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee.

(11)    RECONVEYANCE: Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and the Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as the "person or persons legally entitled thereto". The Trustee may destroy the Note, this Deed of Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance. Trustor shall pay the Trustee's fee for issuance of a reconveyance which shall be $65.00 or the maximum amount allowed by law, whichever is greater.

(12)    MISCELLANEOUS: The Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner or holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. As used herein, "fixtures" includes but is not limited to carpeting, built-in appliances, draperies and drapery rods, shrubs, water tanks, plumbing, machinery, air conditions, ducts, and the like.

(13)    TRUST: Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 21 of 85

of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(14) STATEMENTS: Trustor agrees to pay Beneficiary or his agent, the maximum legal charge for each statement regarding the Trust Deed obligation herein. A statement includes but is not limited to a Beneficiary Statement, Credit Statement, Verification of Mortgage and any statement evidencing the debt.

(15) PARTIAL PAYMENT: Acceptance by Beneficiary of a partial payment on account, after Notice of Default has been recorded, shall not be construed as curing the default nor as a waiver of past or future delinquencies.

(16) DEFAULT AND FORECLOSURE: Upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Beneficiary also shall deposit with Trustee this Deed, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of such Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in such Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which the Property, if consisting of several lots or parcels, shall be sole), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the Property to be sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including the Trustor, Trustee, or Beneficiary as hereinafter defined may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

(17) SUBSTITUTION OF TRUSTEE: Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.

Such instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee. If Notice of Default shall have been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee shall have been paid to such Trustee, who shall endorse receipt thereof upon such instrument of substitution. The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution provided by law.

(18) CC&R'S: If the security under this Deed of Trust is a condominium or a community apartment or planned development project, Trustor agrees to perform each and every obligation of the owner of such condominium or interest in such project under the declaration of covenants, conditions and restrictions or bylaws or regulations pertaining to such condominium or project. Upon the request of Beneficiary, Trustor agrees to enforce against other owners in such condominium or project each and every obligation to be performed by them, if the same have not been performed or if valid legal steps have not been taken to enforce such performance within ninety (90) days after such request is made.

(19) COVENANTS AND REPRESENTATIONS BY TRUSTOR: Trustor covenants and represents that Trustor is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for matters disclosed in writing to Beneficiary. Trustor covenants and represents to Beneficiary that Trustor has provided written disclosure to Beneficiary of all bankruptcy petitions which Trustor has filed at any time and that Trustor is not a debtor under any bankruptcy. In the event that Trustor has filed a petition in bankruptcy or files a petition in bankruptcy at any time prior to the perfection of a secured lien evidenced by this Deed of Trust against the Property, then upon execution of this Deed of Trust Trustor transfers title to the Property to Beneficiary and such transfer shall be deemed a transfer under Bankruptcy Code Section 549.

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 22 of 85

(20)   If this Note is not secured by a deed of trust in first lien position and if there is a note(s) secured by a deed(s) of trust in prior lien position(s) then the deed of trust that secures this Note, if such note(s) secured by a deed(s) of trust in prior lien position(s) are in default for any reason for more than 30 days, then the Lender under this Note has the right to advance monies under this Note towards payments of principal, interest, costs and fees that are owed under such note(s). All such monies shall be added to the balance under this Note as principal and will accrue interest in accordance with this Note. Lender shall notify the Undersigned of the exercise of such right to advance at the address on the deed of trust that is security for this Note at least 30 days prior to the exercise of such right. If Lender incurs fees and costs for accumulating such monies, such fees and costs shall also be due under this Note.

IT IS AGREED BY THE UNDERSIGNED TRUSTOR THAT THE ATTACHED "ABSOLUTE ASSIGNMENT OF RENTS RIDER" IS INCORPORATED HERETO AND IS MADE A PART HEREOF.

This undersigned Trustor(s), requests that a copy of any Notice of Default and any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

TRUSTOR:                                          TRUSTOR:

Priority Acquisitions, Inc., a California Corporation

By: JEREMY MUSSON
Its: OFFICER

_____

A notary public or other officer completing this certificate verifies only the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

State of California,
County of _Alameda_
On _October 9, 2019_ before me, _M Sanchez_ _____ (Notary Public) personally
appeared, _Jeremy Musson_
who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this deed of trust and acknowledged to me that he/she/they executed this deed of trust in his/her/their authorized capacity, and that by his/her/their signature on this deed of trust the person, or the entity upon behalf of which the person acted, executed this Deed of Trust.

I Certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

M. SANCHEZ
COMM. # 2258279
NOTARY PUBLIC · CALIFORNIA
ALAMEDA COUNTY
COMM. EXPIRES OCT. 14, 2022

Notary's Signature

DEED OF TRUST (VERSION 10/14/96) PAGE 5 OF 5

# EXHIBIT A

The land referred to is situated in the unincorporated area of the County of Alameda, State of California, and is described as follows:

PARCEL ONE:

Portion of the land shown on the Map of "Record of Survey, Portion of Elizabeth G. Parsons Estate," filed January 11, 1946, in Book 2 of Licensed Surveys, Pages 16, 17 and 18, described as follows:

Beginning at a point on the center line of Ewing Road distant thereon North 2° 25' 52" West 256 feet from the center line of Parsons Road, as said roads are shown on said Map; and running thence along the center line of said Ewing Road North 2° 25' 52" West 105.12 feet, and Northwesterly tangent with the last named course on a curve to the left with a radius of 400 feet, 15 to the true point of beginning; thence continuing along said course, 109.88 feet; thence South 68° 40' 45" West 581.33 feet; thence South 40° 13' East 35 feet; and thence North 76° 24' 45" East 558.18 feet to the true point of beginning.

APN: 084D-1250-022

PARCEL TWO:

A portion of that Parcel described in the Grant Deed from John J. Tarabochia and Mary A. Tarabochia to Lee Gentili and Edith Janet Gentili, recorded June 6, 1960, on Reel 101, at Image 112, under series no. AR65677, Alameda County Records, being more particularly described as follows:

Commencing at a point on the centerline of Ewing Road distant thereon Northwesterly 645.82 feet from the centerline of Parsons Road, as said roads are shown on aforesaid record of survey map, said point of commencement being the most Northern corner of aforesaid Gentili Parcel; thence along the Northwestern line of said Parcel South 60° 42' 40" West 425.73 feet to a point distant thereon North 60° 42' 40" East 164.00 from the most Western corner of said Parcel, last said point being the actual point of beginning; thence continuing along said Northwestern line South 60° 42' 40" West 164.00 feet to said most Western corner; thence along the Southwestern line of said Parcel South 40° 13' 00" East 80.01 feet to the Southeastern line of said Parcel; thence along said Last line North 68° 42' 05" East 162.40 feet to a line drawn South 36° 03' 00" East from the actual point of beginning; thence along last said drawn line North 36° 03' 00" west 101.84 feet to the actual point of beginning.

APN: 084D-1250-021-03

Case: 23-41651     Doc# 23-4     Filed: 05/09/24     Entered: 05/09/24 16:18:27     Page 24 of 85

EXHIBIT "5"

2023090110      08/09/2023 09:04 AM      4 PGS

OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $108.00

RECORDING REQUESTED BY

*same as below*

WHEN RECORDED MAIL TO

**PEAK FORECLOSURE SERVICES, INC.**
5900 Canoga Avenue, Suite 220
Woodland Hills, CA 91367

**ELECTRONICALLY RECORDED**

| | |
|---|---|
| Trustee's Sale No: | CA-MSL-23019726 |
| Loan No: | G-PRI011 |
| APN: | 084D-1250-021-03, 084D-1250-022 |

*2352049 CNO*

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: PURSUANT TO 2923.3(C)THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $43,015.00 as of 8/7/2023, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things (1) provide additional time in which to

Page 1 of 3

CA NOD

cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure or if your property is in foreclosure for any other reason, contact:

**MEDALLION SERVICING, LLC, AS SERVICER FOR THE BENEFICIARIES OF RECORD**
**PEAK FORECLOSURE SERVICES, INC.**
**5900 Canoga Avenue, Suite 220**
**Woodland Hills, CA 91367**
**(818) 591-9237**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

*SEE Exhibit "A"*

Remember,
## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN** that PEAK FORECLOSURE SERVICES, INC., IS EITHER THE ORIGINAL TRUSTEE, THE DULY APPOINTED TRUSTEE OR ACTING AS AGENT FOR THE TRUSTEE OR BENEFICIARY under a Deed of Trust dated 9/25/2019, executed by PRIORITY ACQUISITIONS, INC., A CALIFORNIA CORPORATION, as Trustor, to secure obligations in favor of MEDALLION GOLD, INC., A CALIFORNIA CORPORATION, AS TO AN UNDIVIDED 71.429% INTERST; IRA SERVICES TRUST COMPANY, CUSTODIAN FBO BRENDA DILES, IRA AS TO AN UNDIVIDED 10.714% INTEREST; JAMES E. KROETCH, TRUSTEE OF THE JAMES E. KROETCH REVOCABLE LIVING TRUST DATED JANUARY 1, 2015, AS TO AN UNDIVIDED 7.143% INTEREST; DAVID L. DOLD, TRUSTEE OF THE DAVID LAWRENCE FOLD REVOCABLE TRUST, AS TO AN UNDIVIDED 10.714% INTEREST;, as Beneficiary, recorded 11/5/2019 , as Instrument No. 2019225837,   of Official Records in the office of the Recorder of ALAMEDA County, CALIFORNIA, as more fully described on said deed of trust including one note(s) for the sum of $420,000.00. That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred as follows:

THE INSTALLMENT OF INTEREST WHICH BECAME DUE  1/1/2023          TOGETHER WITH ALL SUBSEQUENT INSTALLMENTS OF INTEREST, PLUS LATE CHARGES AND FORECLOSURE FEES AND EXPENSES.    ANY ADVANCES WHICH MAY HEREAFTER BE MADE; ALL OBLIGATIONS AND INDEBTEDNESSES AND THEY BECOME DUE AND CHARGES PURSUANT TO SAID NOTE AND DEED OF TRUST.

Case: 23-41651   Doc# 23-4   Filed: 05/09/24   Entered: 05/09/24 16:18:27   Page 27 of 85

Trustee's Sale No:   CA-MSL-23019726
Loan No:          G-PRI011
APN:             084D-1250-021-03, 084D-1250-022

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all the documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  8/7/2023

PEAK FORECLOSURE SERVICES, INC., AS TRUSTEE

By

Kelli J. Espinoza, EVP Default Operations

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 28 of 85

*Exhibit "A"*

# Declaration of Mortgage Servicer Pursuant to
# Civil Code §2923.5(b)

Borrower(s): Priority Acquisitions, Inc., a California Corporation
Beneficiary: Medallion Servicing
Property: 4701 and 4747 Ewing Road, Castro Valley, CA 94546
T.S. No.:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.5(a)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ Despite the exercise of due diligence pursuant to California Civil Code § 2923.5(e), the mortgage servicer has been unable to contact the borrower to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s)did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

4. ☐ The requirements of Cal. Civil Code § 2923.5 do not apply because the loan is not secured by a first lien mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

5. ☒ The requirements of Cal. Civil Code § 2923.5 do not apply because:

   a. ☒  The secured property is non-owner occupied.

   b._____  The secured property is commercial or vacant land.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

MEDALLION SERVICING

Dated: 8-2-23          By: *Brenda Voelker*

EXHIBIT "6"

RECORDING REQUESTED BY
WFG National-Default Services

WHEN RECORDED MAIL TO

PEAK FORECLOSURE SERVICES, INC.
5900 Canoga Avenue, Suite 420
Woodland Hills, CA 91367
(818) 591-9237

2023134272        11/14/2023 09:39 AM        3 PGS
OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $105.00



**ELECTRONICALLY RECORDED**

---

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 9/25/2019.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

# NOTICE OF TRUSTEE'S SALE
### Trustee's Sale No. CA-MSL-23019726

NOTE: PURSUANT TO 2923.3(C) AND 2924.8 THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

[PURSUANT TO CIVIL CODE SECTIONS STATED ABOVE, THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT IS MAILED TO ALL REQUIRED RECIPIENTS]

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **714-730-2727** or visit this Internet Web site **www.servicelinkasap.com**, using the file number assigned to this case, **CA-MSL-23019726**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

**On December 19, 2023, at 12:00:00 PM, AT THE FALLON STREET ENTRANCE TO THE COUNTY COURTHOUSE, 1225 FALLON STREET, in the City of OAKLAND, County of ALAMEDA, State of CALIFORNIA, PEAK FORECLOSURE SERVICES, INC., a California corporation,** as duly appointed Trustee under that certain Deed of Trust executed by PRIORITY ACQUISITIONS, INC., A CALIFORNIA CORPORATION, as Trustors, recorded on 11/5/2019, as Instrument No. 2019225837, of Official Records in the office of the Recorder of ALAMEDA County, State of CALIFORNIA, under the power of sale therein contained, **WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER,** for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below.  The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale. Property is being sold "as is – where is".    TAX PARCEL NO. 084D-1250-021-03, 084D-1250-022
Page 1 of 3

CA NOTS

From information which the Trustee deems reliable, but for which Trustee makes no representation or warranty, the street address or other common designation of the above described property is purported to be 4701 & 4747 EWING ROAD, CASTRO VALLEY, CA 94546.

Said property is being sold for the purpose of paying the obligations secured by said Deed of Trust, including fees and expenses of sale. The total amount of the unpaid principal balance, interest thereon, together with reasonably estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is $295,138.59.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 877-237-7878, or visit www.peakforeclosure.com using file number assigned to this case: CA-MSL-23019726 to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

**NOTICE TO PERSPECTIVE OWNER-OCCUPANT:** Any perspective owner-occupant as defined in Section 2924m of the California Civil Code who is the last and highest bidder at the trustee's sale shall provide the required affidavit or declaration of eligibility to the auctioneer at the trustee's sale or shall have it delivered to PEAK FORECLOSURE SERVICES, INC. by 5:00 PM on the next business day following the trustee's sale at the address set forth above.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of the first publication of this Notice of Sale.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale will be entitled only to the return of the money paid to the Trustee. This shall be the Purchasers sole and exclusive remedy. The Purchaser shall have no further recourse the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney

CA NOTS

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 32 of 85

# NOTICE OF TRUSTEE'S SALE
## Trustee's Sale No. CA-MSL-23019726

WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. **SALE INFORMATION LINE: 714-730-2727 or www.servicelinkasap.com**

Dated: 11/13/2023

PEAK FORECLOSURE SERVICES, INC., AS TRUSTEE

By _____

Lilian Solano, Trustee Sale Officer

Page 3 of 3

CA NOTS

EXHIBIT "7"

Debtors may request to receive Court notices and orders by email instead of U.S. mail. Sign Up at www.canb.uscourts.gov

**Information to identify the case:**

| | | |
|---|---|---|
| Debtor | **Priority Acquistions, Inc.** | EIN: 45–3983626 |
| | Name | |
| United States Bankruptcy Court | California Northern Bankruptcy Court | Date case filed for chapter: 7  12/18/23 |
| Case number: | **23–41651** | |

## Official Form 309C (For Corporations or Partnerships)

# Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline

12/20

For the debtor listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtor or the debtor's property. For example, while the stay is in effect, creditors cannot sue, assert a deficiency, repossess property, or otherwise try to collect from the debtor. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at https://pacer.uscourts.gov ).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**Do not file this notice with any proof of claim or other filing in the case.**

| | | |
|---|---|---|
| **1. Debtor's full name** | Priority Acquistions, Inc. | |
| **2. All other names used in the last 8 years** | | |
| **3. Address** | 16996 Grovener Dr. Castro Valley, CA 94546 | |
| **4. Debtor's attorney** Name and address | Priority Acquistions, Inc. 16996 Grovener Dr. Castro Valley, CA 94546 | Contact phone _____ |
| **5. Bankruptcy trustee** Name and address | Sarah L. Little 2415 San Ramon Valley Blvd. #4432 San Ramon, CA 94583 | Contact phone (510) 485-0740 Email: sarah@littletrustee.com |
| **6. Bankruptcy clerk's office** Documents in this case may be filed at this address. You may inspect all records filed in this case online at https://pacer.uscourts.gov. | **Mailing Address:** U.S. Bankruptcy Court 1300 Clay Street, Suite 300 Oakland, CA 94612 | Hours open: Monday – Friday 9:00 am to 4:30 pm  Contact phone (888) 821-7606  Date: 12/18/23 |
| **7. Meeting of creditors** The debtor's representative must attend the meeting to be questioned under oath. Creditors may attend, but are not required to do so. | **January 10, 2024 at 10:00 AM**  The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | **Via Tele/Videoconference**  Trustee: Sarah L. Little Call in number/URL: www.zoom.com/join Meeting ID:198-895-568 Passcode: 010987 |
| | **Important Notice to Individual Debtors:** The United States Trustee requires all debtors who are individuals to provide government-issued photo identification and proof of social security number to the trustee at the meeting of creditors. **Failure to Appear May Result in the Dismissal of the Case without further notice.** A request for a continuance or to be excused from appearing must be made in writing at least 7 days before the meeting, timely filed with the court at the address above in box 6 and served by mail on the trustee at the address given in box 5. | |
| **8. Proof of claim** Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now.  If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| **9. Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |

Official Form 309C (For Corporations or Partnerships) **Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline**   page 1

EXHIBIT "8"

WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENT TO:



Name:  Jeremy Musson

Street
Address: 16996 Grovenor Drive

City
State
& Zip        Castro Valley, CA 94546

PCOR  $20.00

Title Order No.: N/A          Escrow No.: N/A

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# Grant Deed

The undersigned Grantor(s) declare(s)

DOCUMENTARY TRANSFER TAX IS $ 0.00

☐ Computed on Full Value of the interest or property conveyed, or

☐ Computed on full value less value of liens or encumbrances remaining at time of sale,

☑ Unincorporated Area      City of _____

Parcel No.: 84D-1250-22-02

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Priority Acquisitions Inc., a California corporation

*R&T CODE 11911
LIENED TO FULL VALUE*

Hereby GRANT(s) to:

Jeremy Musson, a married man, as his sole and separate property.

The following described real property in the County of ___Alameda___, State of California

Exhibit "A" Attached

Dated: 11/01/2023

STATE OF CALIFORNIA
COUNTY OF _____

On _____ before me, _____
_____, A Notary Public, personally

appeared _____

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/their/her authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

*Priority Acquisitions Inc  JEREMY MUSSON
APPOINTED OFFICER*

SEE ATTACHED
Acknowledgement
OR Jurat

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.

Jeremy Musson            16996 Grovenor Dr            Castro Valley, CA 94546

Name                     Street Address               City & State

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 37
of 85

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of ___ALAMEDA )

On ___12/14/ 2023___ before me, ___SUNIL DHIR, NOTARY PUBLIC___
(insert name and title of the officer)

personally appeared ___JEREMY MUSSON___,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SUNIL DHIR
COMM. #2362796
NOTARY PUBLIC • CALIFORNIA
ALAMEDA COUNTY
MY COMM. EXP. JULY 24, 2025

Signature _____ (Seal)

# EXHIBIT "A"
## Legal Description

For APN/Parcel ID(s): 084D-1250-022-03 and 084D-1250-022-2, (FORMERLY 084D-1250-021-03 and A PORTION OF 084D-1250-022)

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

### TRACT ONE (084D-1250-022-2)

A PORTION OF THE LAND SHOWN ON THE MAP OF RECORD OF SURVEY, PORTION OF ELIZABETH G. PARSONS ESTATE ETC., FILED JANUARY 11, 1946 IN BOOK 2 OF RECORD OF SURVEYS, AT PAGES 16 THROUGH 18, ALMAEDA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

A PORTION OF THAT PARCEL DESCRIBED IN THE GRANT DEED FROM JENNIFER L. STEVENSON, TRUSTEE OF THE ROBERT L. STEVENSON LIVING TRUST DATED 4/26/94 TO PRIORITY ACQUISITIONS, INC., RECORDED MARCH 21, 2016 AT SERIES NO. 2016-066766, ALAMEDA COUNTY RECORDS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTERLINE OF EWING ROAD (50 FOOT WIDE RW) WIHT THE CENTERLINE OF PROCTOR ROAD (50 FOOT WIDE RW FORMERLY KNOWN AS PARSONS ROAD) AS SAID ROADS ARE SHOWN ON AFORESAID RECORD OF SURVEY; THENCE ALONG SAID CENTERLINE OF EWING ROAD NORTH 2 DEG 25' 52" WEST 361.07 FEET; THENCE CONTINUING ALONG LAST SAID CENTERLINE NORTHEASTERLY ON A TANGENT CURVE TO THE LEFT, WITH A RADIUS OF 400 FEET, THROUGH A CENTRAL ANGLE OF 2 DEG 08' 55" AN ARC DISTANCE OF 15 FEET TO THE SOUTHEASTERN LINE OF AFORESAID PARCEL(2016-066766); THENCE CONTINUING ALONG SAID CENTERLINE CURVE, THROUGH A CENTRAL ANGLE OF 4 DEG 35' 25" AN ARC DISTANCE OF 32.06 FEET TO THE TRUE POINT OF BEGINNING;

THENCE CONTINUING ALONG SAID CENTERLINE CURVE, THROUGH A CENTRAL ANGLE OF 11 DEG 08' 56" AN ARC DISTANCE OF 77.83 FEET TO THE NORTHWESTERN LINE OF SAID PARCEL (2016-066766); THENCE ALONG LAST SAID LINE SOUTH 68 DEG 42'05" WEST 272.255 FEET; THENCE SOUTH 13 DEG 33' 52" EAST 48.88 FEET TO A LINE DRAWN PARALLEL WITH AND 24 FEET NORTHWESTERLY OF SAID SOUTHEASTERN LINE OF SAID PARCEL (2016-066766); THENCE ALONG SAID PARALLEL LINE NORTH 76 DEG 26' 08" EAST 195.30 FEET; THENCE NORTHEASTERLY ON A TANGENT CURVE TO THE LEFT, WITH A RADIUS OF 100 FEET, THROUGH A CENTRAL ANGLE OF 14 DEG 05' 10", AN ARC DISTANCE OF 24.58 FEET; THENCE NORTH 62 DEG 20' 58" EAST 27.65 FEET TO THE NORTHWESTERN LINE OF SAID EWING ROAD; THENCE NORTH 80 DEG 49' 48" EAST 25 FEET TO THE TRUE POINT OF BEGINNING.

PURSUANT TO THE CERTIFICATE OF COMPLIANCE AND LOT LINE ADJUSTMENT RECORDED JANUARY 24, 2022 AS INSTRUMENT NO. 2022015927 OF OFFICIAL RECORDS

APN 084D-1250-022-00 PTN

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

### TRACT TWO (084D-1250-022-3)

PARCEL ONE

A PORTION OF THE LAND SHOWN ON THE MAP OF "RECORD OF SURVEY, PORTION OF ELIZABETH G. PARSONS ESTATE, ETC.", FILED JANUARY 11, 1946, IN BOOK 2 OF RECORDS OF SURVEY, AT PAGES 16 THROUGH 18, ALAMEDA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 39 of 85

**EXHIBIT "A"**
Legal Description
(continued)

ALL OF THAT PARCEL DESCRIBED IN THE GRANT DEED FROM WILHELMINA HUGHES TO PRIORITY ACQUISITIONS INC., HEREINAFTER REFERRED TO AS PARCEL A FOR PURPOSES OF THIS DESCRIPTION, RECORDED AUGUST 1, 2019 AT SERIES NO. 2019148444, ALAMEDA COUNTY RECORDS, AND A PORTION OF THAT PARCEL DESCRIBED IN THE GRANT DEED FROM JENNIFER L. STEVENSON, TRUSTEE OF THE ROBERT L. STEVENSON LIVING TRUST DATED 4/26/94 TO PRIORITY ACQUISITIONS INC, HEREINAFTER REFERRED TO AS PARCEL B FOR PURPOSES OF THIS DESCRIPTION, RECORDED MARCH 21, 2016 AT SERIES 2016-066766, ALAMEDA COUNTY RECORDS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTERLINE OF EWING ROAD (50 FOOT WIDE RW) WITH THE CENTERLINE OF PROCTOR ROAD (50 FOOT WIDE RW FORMERLY KNOWN AS PARSONS ROAD) AS SAID ROADS ARE SHOWN ON AFORESAID RECORD OF SURVEY; THENCE ALONG SAID CENTERLINE OF EWING ROAD NORTH 2 DEG 25' 52" WEST 361.07 FEET; THENCE CONTINUING ALONG LAST SAID CENTERLINE NORTHEASTERLY ON A TANGENT CURVE TO THE LEFT, WITH A RADIUS OF 400 FEET, THROUGH A CENTRAL ANGLE OF 2 DEG 08' 55" AN ARC DISTANCE OF 15 FEET TO A POINT ON THE SOUTHEASTERN LINE OF AFORESAID PARCEL B (2016-066766) LAST SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE ALONG LAST SAID LINE SOUTH 76 DEG 26' 08" WEST 558.19 FEET TO THE SOUTHWESTERN LINE OF SAID PARCEL B; THENCE ALONG LAST SAID LINE AND THE SOUTHWESTERN LINE OF AFORESAID PARCEL A (2019148444) NORTH 40 DEG 13' 00" WEST 115.01 FEET TO THE NORTHWESTERN LINE OF SAID PARCEL A; THENCE ALONG SAID SAID LINE NORTH 60 DEG 42' 40" EAST 164 FEET TO THE NORTHEASTERN LINE OF SAID PARCEL A; THENCE ALONG LAST SAID LINE SOUTH 36 DEG 03' 00" EAST 101.84 FEET TO THE NORTHWESTERN LINE OF SAID PARCEL B; THENCE ALONG LAST SAID LINE NORTH 68 DEG 42' 05" EAST 146.66 FEET TO A POINT DISTANT THEREON SOUTH 68 DEG 42' 05" WEST 272.25 FEET FROM AFORESAID CENTERLINE OF EWING ROAD; THENCE SOUTH 13 DEG 33' 52" EAST 48.88 FEET TO A LINE DRAWN PARALLEL WITH AND 24 FEET NORTHWESTERLY OF AFORESAID SOUTHEASTERN LINE OF PARCEL B; THENCE ALONG SAID PARALLEL LINE NORTH 76 DEG 29' 08" EAST 195.30 FEET; THENCE NORTHEASTERLY ON A TANGENT CURVE TO THE LEFT, WITH A RADIUS OF 100 FEET THROUGH A CENTRAL ANGLE OF 14 DEG 05' 10" AN ARC DISTANCE OF 24.58 FEET; THENCE NORTH 62 DEG 20' 58" EAST 27.65 FEET TO THE NORTHWESTERN LINE OF SAID EWING ROAD; THENCE NORTH 80 DEG 49' 48" EAST 25 FEET TO A POINT ON THE AFOREDESCRIBED 400 FOOT RADIUS CENTERLINE OF EWING ROAD THE CENTERPOINT OF WHICH BEARS SOUTH 80 DEG 49' 48" WEST FROM LAST SAID POINT; THENCE SOUTHEASTERLY ALONG SAID CENTERLINE ON A CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 4 DEG 35' 25", AN ARC DISTANCE OF 32.06 FEET OT THE TRUE POINT OF BEGINNING.

PURSUANT TO THE CERTIFICATE OF COMPLIANCE AND LOT LINE ADJUSTMENT RECORDED JANUARY 24, 2022 AS INSTRUMENT NO. 2022015927 OF OFFICIAL RECORDS

APN 084D-1250-021-03 AND 084D-1250-022-00 PTN

PARCEL TWO:

A NON-EXCLUSIVE PERPETUAL EASEMENT FOR THE USE, REPLACEMENT, RECONSTRUCTION AND REPAIR, AND THE NON-EXCLUSIVE ENJOYMENT OF AN UNDERGROUND SANITARY SEWER LINE AND ALL APPURTENANCES BY EASEMENT AGREEMENT RECORDED JANUARY 19, 2017 AS INSTRUMENT NO. 2017014535 OF OFFICIAL RECORDS

EXHIBIT "9"

RECORDING REQUESTED BY:

2023146119    12/14/2023 01:23 PM    4 PGS
OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $98.00

WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENT TO:

Name:  Jeremy Musson

Street
Address: 16996 Grovenor Drive
         Castro Valley, CA 94546

City
State
& Zip

 PCOR  $20.00

Title Order No.: N/A          Escrow No.: N/A          SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Grant Deed

The undersigned Grantor(s) declare(s)
DOCUMENTARY TRANSFER TAX IS $ 0.00 _____
- [ ] Computed on Full Value of the interest or property conveyed, or
- [ ] Computed on full value less value of liens or encumbrances remaining at time of sale.
- [✓] Unincorporated Area      City of _____    R&T CODE 11911
                                                           I LIENED TO
      Parcel No.: 84D-1250-22-03                           FULL VALUE

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Priority Acquisitions Inc., as to an undivided 76% interest, Louis Michael Liwanag, as to an undivided 13%
interest, and Alexander Miguel Songco Martin, as to an undivided 13% interest, as tenants in common.

Hereby GRANT(s) to:

Jeremy Musson, as to an undivided 76% interest, Louis Michael Liwanag, as to an undivided 13% interest,
and Alexander Miguel Songco Martin, as to an undivided 13% interest, as tenants in common.

The following described real property in the County of  Alameda _____ , State of California
Exhibit "A" Attached

Dated: 11/01/2023 _____

STATE OF CALIFORNIA
COUNTY OF _____

On _____ before me, _____
_____, A Notary Public, personally

appeared _____

Priority Acquisitions Inc  JEREMY MUSSON
                           APPOINTED OFFICER

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/their/her authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

SEE ATTACHED
Acknowledgement
OR Jurat

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.

| Jeremy Musson | 16996 Grovenor Dr | Castro Valley, CA 94546 |
|---|---|---|
| Name | Street Address | City & State |

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _ALAMEDA_

On _12/14/2023_ before me, _SUNIL DHIR, NOTARY PUBLIC_
(insert name and title of the officer)

personally appeared _JEREMY MUSSON_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

SUNIL DHIR
COMM. #2362796
NOTARY PUBLIC · CALIFORNIA
ALAMEDA COUNTY
MY COMM. EXP. JULY 24, 2025

# EXHIBIT "A"
## Legal Description

For APN/Parcel ID(s): 084D-1250-022-03 and 084D-1250-022-2, (FORMERLY 084D-1250-021-03 and A PORTION OF 084D-1250-022)

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

## TRACT ONE (084D-1250-022-2)

A PORTION OF THE LAND SHOWN ON THE MAP OF RECORD OF SURVEY, PORTION OF ELIZABETH G. PARSONS ESTATE ETC., FILED JANUARY 11, 1946 IN BOOK 2 OF RECORD OF SURVEYS, AT PAGES 16 THROUGH 18, ALMAEDA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

A PORTION OF THAT PARCEL DESCRIBED IN THE GRANT DEED FROM JENNIFER L. STEVENSON, TRUSTEE OF THE ROBERT L. STEVENSON LIVING TRUST DATED 4/26/94 TO PRIORITY ACQUISITIONS, INC., RECORDED MARCH 21, 2016 AT SERIES NO. 2016-066766, ALAMEDA COUNTY RECORDS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTERLINE OF EWING ROAD (50 FOOT WIDE RW) WIHT THE CENTERLINE OF PROCTOR ROAD (50 FOOT WIDE RW FORMERLY KNOWN AS PARSONS ROAD) AS SAID ROADS ARE SHOWN ON AFORESAID RECORD OF SURVEY; THENCE ALONG SAID CENTERLINE OF EWING ROAD NORTH 2 DEG 25' 52" WEST 361.07 FEET; THENCE CONTINUING ALONG LAST SAID CENTERLINE NORTHEASTERLY ON A TANGENT CURVE TO THE LEFT, WITH A RADIUS OF 400 FEET, THROUGH A CENTRAL ANGLE OF 2 DEG 08' 55" AN ARC DISTANCE OF 15 FEET TO THE SOUTHEASTERN LINE OF AFORESAID PARCEL(2016-066766); THENCE CONTINUING ALONG SAID CENTERLINE CURVE, THROUGH A CENTRAL ANGLE OF 4 DEG 35' 25" AN ARC DISTANCE OF 32.06 FEET TO THE TRUE POINT OF BEGINNING:

THENCE CONTINUING ALONG SAID CENTERLINE CURVE, THROUGH A CENTRAL ANGLE OF 11 DEG 08' 56" AN ARC DISTANCE OF 77.83 FEET TO THE NORTHWESTERN LINE OF SAID PARCEL (2016-066766); THENCE ALONG LAST SAID LINE SOUTH 68 DEG 42'05" WEST 272.255 FEET; THENCE SOUTH 13 DEG 33' 52" EAST 48.88 FEET TO A LINE DRAWN PARALLEL WITH AND 24 FEET NORTHWESTERLY OF SAID SOUTHEASTERN LINE OF SAID PARCEL (2016-066766); THENCE ALONG SAID PARALLEL LINE NORTH 76 DEG 26' 08" EAST 195.30 FEET; THENCE NORTHEASTERLY ON A TANGENT CURVE TO THE LEFT, WITH A RADIUS OF 100 FEET, THROUGH A CENTRAL ANGLE OF 14 DEG 05' 10", AN ARC DISTANCE OF 24.58 FEET; THENCE NORTH 62 DEG 20' 58" EAST 27.65 FEET TO THE NORTHWESTERN LINE OF SAID EWING ROAD; THENCE NORTH 80 DEG 49' 48" EAST 25 FEET TO THE TRUE POINT OF BEGINNING.

PURSUANT TO THE CERTIFICATE OF COMPLIANCE AND LOT LINE ADJUSTMENT RECORDED JANUARY 24, 2022 AS INSTRUMENT NO. 2022015927 OF OFFICIAL RECORDS

APN 084D-1250-022-00 PTN

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

## TRACT TWO (084D-1250-022-3)

PARCEL ONE

A PORTION OF THE LAND SHOWN ON THE MAP OF "RECORD OF SURVEY, PORTION OF ELIZABETH G. PARSONS ESTATE, ETC.", FILED JANUARY 11, 1946, IN BOOK 2 OF RECORDS OF SURVEY, AT PAGES 16 THROUGH 18, ALAMEDA COUNTY RECORDS, DESCRIBED AS FOLLOWS:

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 44 of 85

# EXHIBIT "A"
## Legal Description
### (continued)

ALL OF THAT PARCEL DESCRIBED IN THE GRANT DEED FROM WILHELMINA HUGHES TO PRIORITY ACQUISITIONS INC., HEREINAFTER REFERRED TO AS PARCEL A FOR PURPOSES OF THIS DESCRIPTION, RECORDED AUGUST 1, 2019 AT SERIES NO. 2019148444, ALAMEDA COUNTY RECORDS, AND A PORTION OF THAT PARCEL DESCRIBED IN THE GRANT DEED FROM JENNIFER L. STEVENSON, TRUSTEE OF THE ROBERT L. STEVENSON LIVING TRUST DATED 4/26/94 TO PRIORITY ACQUISITIONS INC, HEREINAFTER REFERRED TO AS PARCEL B FOR PURPOSES OF THIS DESCRIPTION, RECORDED MARCH 21, 2016 AT SERIES 2016-066766, ALAMEDA COUNTY RECORDS, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTERLINE OF EWING ROAD (50 FOOT WIDE RW) WITH THE CENTERLINE OF PROCTOR ROAD (50 FOOT WIDE RW FORMERLY KNOWN AS PARSONS ROAD) AS SAID ROADS ARE SHOWN ON AFORESAID RECORD OF SURVEY; THENCE ALONG SAID CENTERLINE OF EWING ROAD NORTH 2 DEG 25' 52" WEST 361.07 FEET; THENCE CONTINUING ALONG LAST SAID CENTERLINE NORTHEASTERLY ON A TANGENT CURVE TO THE LEFT, WITH A RADIUS OF 400 FEET, THROUGH A CENTRAL ANGLE OF 2 DEG 08' 55" AN ARC DISTANCE OF 15 FEET TO A POINT ON THE SOUTHEASTERN LINE OF AFORESAID PARCEL B (2016-066766) LAST SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE ALONG LAST SAID LINE SOUTH 76 DEG 26' 08" WEST 558.19 FEET TO THE SOUTHWESTERN LINE OF SAID PARCEL B; THENCE ALONG LAST SAID LINE AND THE SOUTHWESTERN LINE OF AFORESAID PARCEL A (2019148444) NORTH 40 DEG 13' 00" WEST 115.01 FEET TO THE NORTHWESTERN LINE OF SAID PARCEL A; THENCE ALONG LAST SAID LINE NORTH 60 DEG 42' 40" EAST 164 FEET TO THE NORTHEASTERN LINE OF SAID PARCEL A; THENCE ALONG LAST SAID LINE SOUTH 36 DEG 03' 00" EAST 101.84 FEET TO THE NORTHWESTERN LINE OF SAID PARCEL B; THENCE ALONG LAST SAID LINE NORTH 68 DEG 42' 05" EAST 146.66 FEET TO A POINT DISTANT THEREON SOUTH 68 DEG 42' 05" WEST 272.25 FEET FROM AFORESAID CENTERLINE OF EWING ROAD; THENCE SOUTH 13 DEG 33' 52" EAST 48.88 FEET TO A LINE DRAWN PARALLEL WITH AND 24 FEET NORTHWESTERLY OF AFORESAID SOUTHEASTERN LINE OF PARCEL B; THENCE ALONG SAID PARALLEL LINE NORTH 76 DEG 29' 08" EAST 195.30 FEET; THENCE NORTHEASTERLY ON A TANGENT CURVE TO THE LEFT, WITH A RADIUS OF 100 FEET THROUGH A CENTRAL ANGLE OF 14 DEG 05' 10" AN ARC DISTANCE OF 24.58 FEET; THENCE NORTH 62 DEG 20' 58" EAST 27.65 FEET TO THE NORTHWESTERN LINE OF SAID EWING ROAD; THENCE NORTH 80 DEG 49' 48" EAST 25 FEET TO A POINT ON THE AFOREDESCRIBED 400 FOOT RADIUS CENTERLINE OF EWING ROAD THE CENTERPOINT OF WHICH BEARS SOUTH 80 DEG 49' 48" WEST FROM LAST SAID POINT; THENCE SOUTHEASTERLY ALONG SAID CENTERLINE ON A CURVE TO THE RIGHT THROUGH A CENTRAL ANGLE OF 4 DEG 35' 25", AN ARC DISTANCE OF 32.06 FEET OT THE TRUE POINT OF BEGINNING.

PURSUANT TO THE CERTIFICATE OF COMPLIANCE AND LOT LINE ADJUSTMENT RECORDED JANUARY 24, 2022 AS INSTRUMENT NO. 2022015927 OF OFFICIAL RECORDS

APN 084D-1250-021-03 AND 084D-1250-022-00 PTN

PARCEL TWO:

A NON-EXCLUSIVE PERPETUAL EASEMENT FOR THE USE, REPLACEMENT, RECONSTRUCTION AND REPAIR, AND THE NON-EXCLUSIVE ENJOYMENT OF AN UNDERGROUND SANITARY SEWER LINE AND ALL APPURTENANCES BY EASEMENT AGREEMENT RECORDED JANUARY 19, 2017 AS INSTRUMENT NO. 2017014535 OF OFFICIAL RECORDS

EXHIBIT "10"



**WFG** National Title Insurance Company®
a Williston Financial Group company

### TRUSTEE'S SALE GUARANTEE

SUBJECT TO THE EXCLUSIONS FROM COVERAGE AND THE CONDITIONS ATTACHED HERETO AND
MADE A PART OF THIS GUARANTEE

**WFG NATIONAL TITLE INSURANCE COMPANY**
a South Carolina corporation, herein called the Company

GUARANTEES

the Assured named in Schedule A of this Guarantee

against loss or damage not exceeding the liability amount stated in Schedule A sustained by the Assured by reason
of any incorrectness in the assurances set forth in  Paragraph 3 of Schedule A.

**In Witness Whereof**, WFG NATIONAL TITLE INSURANCE COMPANY has caused this guarantee to be signed
and sealed by its duly authorized officers as of Date of Guarantee shown in Schedule A.

**WFG NATIONAL TITLE INSURANCE COMPANY**

By: _____
President

ATTEST: _____
Secretary

WFG Form No. 3174406
CLTA Guarantee Form No. 22 (06-05-14) – Trustee's Sale Guarantee
Revised 1-07-2017

# TRUSTEE'S SALE GUARANTEE

## SCHEDULE A

Guarantee No.: 3174406-7188323
File No.: 2352049CAD
Your No.: CA-MSL-23019726

Date of Guarantee: August 9, 2023

Liability: $240,000.00

Fee: $540.00

1. Name of Assured:

   **Peak Foreclosure Services, Inc., and Medallion Gold, Inc., a California Corporation as to an undivided 42.858% interest; IRA Services Trust Company, Custodian FBO Brenda Diles, IRA as to an undivided 10.714% interest; James E. Kroetch, Trustee of the James E. Kroetch Revocable Living Trust Dated January 1, 2015, as to an undivided 12.381 % interest; David L. Dold. Trustee of the David Lawrence Dold Revocable Trust, as to an undivided 10.714% interest; Brenda Voelker 401K Plan and Trust as to an undivided 0.952% interest; IRA Services Trust Company, Custodian FBO Brenda Diles, IRA as to an undivided 2.143% interest; Pacific Premier Trust, Custodian FBO Daniel S. Mount, IRA, as to an undivided 20.238% interest**

2. The estate or interest in the Land that is the subject of this Guarantee is:

   **Fee Simple**

3. Assurances:

   According to the Public Records as of the Date of Guarantee,

   a. Title to the estate or interest is vested in:

      **Priority Acquisitions, Inc. a California Corporation, subject to items 17, 18, 19, 20 and 24 herein**

   b. Title to the estate or interest is subject to defects, liens or encumbrances shown in Schedule B which are not necessarily shown in the order of their priority.

   c. The Land referred to in this Guarantee is situated in the State of California, County of Alameda, and is described as follows:

      **See Exhibit "A" attached hereto and made a part hereof**

   d. Relative to the Mortgage shown in Paragraph 12 of Schedule B:

      i. For the purposes of California Civil Code §§ 2924b (b) and (d), the address of the trustor or mortgagor as shown in the Mortgage is:

         **Priority Acquisitions, Inc., a California Corporation**
         **16996 Grovenor Drive**
         **Castro Valley, CA 94546**

         **Priority Acquisitions, Inc., a California Corporation**
         **4701 Ewing Road**
         **Castro Valley, CA 94546**

         **Priority Acquisitions, Inc., a California Corporation**
         **4747 Ewing Road**
         **Castro Valley, CA 94546**

      ii. The names and addresses of all persons who have recorded requests for a copy of notice of default and for a copy of notice of sale as provided by California Civil Code §§ 2924b (a), (b) and (d) are:

          **None**

      iii. The names and addresses of all additional persons who are entitled to receive a copy of notice of default and a copy of notice of sale as provided by California Civil Code §§ 2924b (c) (1), (2) and (3) are:

           **Priority Acquisitions, Inc. a California Corporation**
           **C/O Priority Acquisitions, Inc**
           **16996 Grovenor Dr.**
           **Castro Valley, CA 94546**

           **Affects: Vesting**

WFG Form No. 3174406
CLTA Guarantee Form No. 22 (06-05-14) – Trustee's Sale Guarantee
Revised 1-07-2017

Addis Investments LLC
519 Crofton Ave
Oakland, CA 94610

Affects: Item #13, #14

Alameda County Tax Collector, Unsecured Taxes Division
1221 Oak Street, Room 131
Oakland, CA 94612

Affects: Item #15, #16

Louis Michael Liwanag
4701 Ewing Road
Castro Valley, CA 94546

Affects: Item #17

Louis Michael Liwanag
4747 Ewing Road
Castro Valley, CA 94546

Affects: Item #17

Louis Michael Liwanag
C/O Priority Acquisitions Inc
16996 Grovenor Drive
Castro Valley, CA 94546

Affects: Item #17

Alexander Miguel Songco Martin
4701 Ewing Road
Castro Valley, CA 94546

Affects: Item #18

Alexander Miguel Songco Martin
4747 Ewing Road
Castro Valley, CA 94546

Affects: Item #18

Alexander Miguel Songco Martin
C/O Priority Acquisitions Inc
16996 Grovenor Drive
Castro Valley, CA 94546

Affects: Item #18

Golden State Lumber, Inc
855 Lakeville Street, Suite 200
Petaluma, CA 94952

Affects: Item #21

Marc D. Coopersmith, Corporate Counsel
Golden State Lumber, Inc
855 Lakeville Street, Suite 200
Petaluma, CA 94952

Affects: Item #21

Wilhelmina Hughes
C/O Bea Keitel Tyree

**130 2nd Ave N., #369**
**Edmonds, WA 98020**

**Affects: Item #22**

**Sunbelt Rentals, Inc**
**2341 Deerfield Dr**
**Fort Mill, SC 29715**

**Affects: Item #23**

iv.  The names and addresses of all associations defined in California Civil Code §§ 4080 or 6528 that have recorded a request for notice that are entitled to receive a copy of any trustee's deed upon sale as provided by California Civil Code § 2924b (f) are:

   **None**

v.  The names and addresses of all state taxing agencies that are entitled to receive a copy of notice of sale as provided by California Civil Code (c) (3) are:

   **None**

vi.  The address of the Internal Revenue Service to which a copy of notice of sale is to be mailed as provided by California Civil Code § 2924b (c) (4) is:

   **Not Applicable**

vii.  The name of each city in which the Land is located is:

   **Not Applicable**

   If not in a city, each public notice district in which the land is located is:

   **San Leandro-Hayward**

viii.  The name of a newspaper of general circulation for the publication of a notice of sale as required by California Civil Code § 2924f (b) (1) is:

   **The Daily Review**
   **Published: Tuesday-Saturday**

**TRUSTEE'S SALE GUARANTEE**

**SCHEDULE B**

1.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes, to be levied for the fiscal year 2023-2024.

2.  Said land has been declared tax defaulted for delinquent taxes, and subsequent delinquencies for the fiscal years 2019-2023.

    | | |
    |---|---|
    | Amount to redeem: | $68,132.05 |
    | Prior to: | August 31, 2023 |

    For proration purposes the tax amounts, which are included in the default figures above mentioned, are shown as:

    | | |
    |---|---|
    | First Installment: | $8,073.68, Delinquent |
    | Second Installment: | $8,083.68, Delinquent |
    | Code Area: | 54-011 |
    | Parcel Number: | 084D-1250-022 |

    Said matter affects: Parcel 1

3.  Said land has been declared tax defaulted for delinquent taxes, and subsequent delinquencies for the fiscal years 2020-2023.

    | | |
    |---|---|
    | Amount to redeem: | $21,623.99 |
    | Prior to: | August 31, 2023 |

    For proration purposes the tax amounts, which are included in the default figures above mentioned, are shown as:

    | | |
    |---|---|
    | First Installment: | $52.69, Delinquent |
    | Second Installment: | $62.69, Delinquent |
    | Code Area: | 54-011 |
    | Parcel Number: | 084D-1250-021-03 |

    Said matter affects: Parcel 2

4.  Assessments, if any, for Community Facility Districts affecting said land which may exist by virtue of assessment map or notices filed by said districts. Said assessments are collected with the County Taxes.

5.  The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (commencing with Section 75) of the Revenue and Taxation Code of the State of California.

6.  Said land disclosed herein is also known by the County Tax Assessor as the following parcel number(s):

    084D-1250-022, 084D-1250-021-03

7.  Covenants, conditions, or restrictions, if any, appearing in the Public Records; but omitting, except to the extent permitted by any applicable federal or state law, covenants or restrictions, if any, based on race, color, religion, sex, familial status, national origin, handicap, sexual orientation, marital status, ancestry, source of income, disability, medical condition, or other unlawful basis.

8.  Any easements, servitudes, or senior encumbrances appearing in the Public Records.

9.  Any lease, grant, exception, or reservation of mineral rights appearing in the Public Records.

10. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

    | | |
    |---|---|
    | Amount: | $735,000.00 |
    | Dated: | February 25, 2016 |
    | Trustor: | Priority Acquisitions Inc., a California Corporation |
    | Trustee: | Medallion Servicing LLC, a California Limited Liability Company |
    | Lender: | Pensco Trust Company, Custodian fbo Jo Ann Lockyer, IRA as to an undivided 12.245% interest; Jo Ann Lockyer, as to an undivided 17.006% interest; Pensco Trust Company, Custodian fbo Dave Dold, IRA, as to an undivided 20.408% interest; David L. Dold, Trustee of the David Lawrence Dold Revocable Trust, as to an undivided 10.204% interest; Kenneth P. Marinai and Laura A. Marinai, Trustees of the Marinai Family Trust, as to an undivided 10.204% interest; Phillip T. Cantor, Trustee of the Phillip T. Cantor Living Trust, as to an undivided 4.082% interest; Nancy |

L. Rapp, Trustee of the Nancy L. Rapp Living Trust, as to an undivided 6.803% interest; Donna Ames-Heldfoud, Trustee of the Heldfond Family Trust as to an undivided 8.163% interest; Geoffrey H. Saft and Claudia Saft, husband and wife, as to an undivided 4.082% interest; Lawrence M. Neal, Trustee of the Lawrence M. Neal Revocable Living Trust dated August 19, 2004, as to an undivided 6.803% interest

Recorded:                      March 21, 2016
Instrument No.:            2016066767, of Official Records

Said matter affects: Parcel 1

11. An Abstract of Judgment recorded August 26, 2019, as Instrument No. 2019166427, of Official Records:

Court:                  Superior Court
Case No. :             Rg18927977
Entry Date:          November 8, 2018
Debtor:               Priority Acquisitions, Inc. /DBA Priority Acquisitions
Creditor:             Premier Capital Funding, LLC
Amount:               $53,978.45

12. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

Amount:              $420,000.00
Dated:                September 25, 2019
Trustor:              Priority Acquisitions Inc., a California Corporation
Trustee:             Medallion Servicing LLC, a California Limited Liability Company
Lender:              Medallion Gold Inc., a California Corporation as to an undivided 71.429% interest; IRA Services Trust Company, Custodian FBO Brenda Diles, IRA as to an undivided 10.714% interest; James E. Kroetch, Trustee of the James. E. Kroetch Revocable Living Trust Dated January 1, 2015, as to an undivided 7.143% interest; David L. Dold, Trustee of the David Lawrence Dold Revocable Trust, as to an undivided 10.714% interest
Recorded:             November 5, 2019
Instrument No.:      2019225837, of Official Records

The beneficial interest under said Deed of Trust was:
Assigned to:          Brenda Voelker 401K Plan and Trust, as to an undivided 0.952% interest (being $4,000.00); IRA Services Trust Company, Custodian FBO Brenda Diles, IRA as to an undivided 2.143% interest (being $9,000.00); James E. Kroetch, Trustee of the James E. Kroetch Revocable Living Trust dated January 1, 2015, as to an undivided 5.238% interest (being $22,000.00)
By:                    Medallion Gold Inc., a California Corporation
By Assignment Recorded:   September 29, 2020
As Instrument No.:    2020252559, of Official Records

The beneficial interest under said Deed of Trust was:
Assigned to:          Pacific Premier Trust, Custodian FBO Daniel S. Mount, IRA, as to an undivided 20.238% interest (being $85,000.00)
By:                    Medallion Gold Inc., a California Corporation
By Assignment Recorded:   October 14, 2020
As Instrument No.:    2020272169, of Official Records

A Substitution of Trustee which names Peak Foreclosure Services, Inc., a California Corporation as trustee, recorded August 9, 2023, as Instrument No. 2023090109, of Official Records.

A Notice of Default recorded August 9, 2023, as Instrument No. 2023090110, of Official Records.

13. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

Amount:              $130,000.00
Dated:                July 8, 2019
Trustor:              Priority Acquisitions, Inc.
Trustee:             Addis Investments LLC
Lender:              Addis Investments LLC
Recorded:             December 12, 2019
Instrument No.:      2019255489, of Official Records

Said matter affects: Parcel 1

14. Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby:

| | |
|---|---|
| Amount: | $199,605.00 |
| Dated: | November 20, 2019 |
| Trustor: | Priority Acquisitions Inc., a California Corporation, |
| Trustee: | Old Republic Title Company, a California Corporation |
| Lender: | Addis Investments, LLC, a California Limited Liability Company |
| Recorded: | February 5, 2020 |
| Instrument No.: | 2020025737, of Official Records |

15. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and other amounts due thereunder, Alameda County, Fiscal Year 2016-2017, Taxpayer Priority Acquisitions LLC, County ID 084D-1250-022, in the amount of $3,443.58, recorded February 5, 2020, as Instrument No. 2020028449, of Official Records.

16. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and other amounts due thereunder, Alameda County, Fiscal Year 2017-2018, Taxpayer Priority Acquisitions LLC, County ID 084D-1250-022, in the amount of $7,666.72, recorded February 3, 2021, as Instrument No. 2021046850, of Official Records.

17. The matters contained in an instrument entitled Grant Deed, dated June 17, 2021, by and between Priority Acquisitions Inc., as grantor and Priority Acquisitions Inc, as to an undivided 66.67% interest and Louis Michael Liwanag, a married man, as his sole and separate property as to an undivided 33.33% interest, as tenants, in common, as grantee, upon the terms and conditions and covenants therein provided and recorded June 24, 2021, as Instrument No. 2021226400, of Official Records.

18. The matters contained in an instrument entitled Grant Deed, dated July 29, 2021, by and between Priority Acquisitions Inc., as grantor and Priority Acquisitions Inc, as to an undivided 33.34% interest, Louis Michael Liwanag, a married man, as his sole and separate property as to an undivided 33.33% interest, Alexander Miguel Songco Martin as to an undivided 33.33% as tenants in common, as grantee, upon the terms and conditions and covenants therein provided and recorded July 29, 2021, as Instrument No. 2021262451, of Official Records.

19. The matters contained in an instrument entitled Grant Deed Lot Line Adjustment, dated October 8, 2021, by and between Priority Acquisitions, Inc., Louis Michael Liwanag and Alexander Miguel Songco Martin, as their interests may appear of record, as grantor and Priority Acquisitions, Inc., as to an undivided 33.34% interest, Louis Michael Liwanag, as to an undivided 33.33% interest, and Alexander Miguel Songco Martin, as to an undivided 33.33% interest, as tenants in common, as grantee, upon the terms and conditions and covenants therein provided and recorded January 24, 2022, as Instrument No. 2022015928, of Official Records.

20. The matters contained in an instrument entitled Grant Deed Lot Line Adjustment, dated October 14, 2021, by and between Priority Acquisitions, Inc., as grantor and Priority Acquisitions, Inc., as grantee, upon the terms and conditions and covenants therein provided and recorded January 24, 2022, as Instrument No. 2022015929, of Official Records.

21. A claim of Mechanics Lien recorded June 21, 2022, as Instrument No. 2022114813, of Official Records, by Golden State Lumber, Inc., Claimant, in the amount of $76,177.45, and any other amounts due thereunder.

22. A notice of pendency of action to foreclose a mechanics lien filed by Golden State Lumber, Inc., a California Corporation, Plaintiff, against Jeremy Musson, an individual; Priority Acquisitions Inc., a California corporation; Pensco Trust Company, a business entity, form unknown, as custodian for Jo Ann Lockyer; Jo Ann Lockyer, an individual; Pensco Trust Company, a business entity, form unknown, as custodian for Dave Dold; David L. Dold, an individual and as trustee of the David Lawrence Dold Revocable Trust; Kenneth P. Marinai, an individual and as trustee of the Marinai family trust; Laura A. Marinai, an individual and as trustee of the Marinai Family Trust; Phillip T. Cantor, an individual and as trustee of the Phillip T. Cantor Living Trust; Nancy L. Rapp, an individual and as trustee of the Nancy L. Rapp Living Trust; Donna Ames-Heldfond, an individual and as trustee of the Heldfond Family Trust; Geoffrey H. Saft, an individual; Claudia Saft, an individual; Lawrence M. Neal, an individual and as trustee of the Lawrence M. Neal Revocable Living Trust; Addis Investments LLC, a California Limited Liability Company; Medallion Gold, Inc., a California Corporation, IRA Services Trust Company, a Business entity, form unknown as custodian for Brenda Diles; James E. Kroetch, an Individual and as Trustee of the James E Kroetch Revocable Living Trust; Alexander Miguel Songco Martin, an Individual; Christian Noel Singso Martin, an Individual; Louis Michael Tuazon Liwanag, an Individual; Pacific Premier Trust, a business entity form Unknown, as custodian for Daniel S. Mount; Sunbelt Rentals, Inc., a North Carolina corporation; and does one through one hundered, inclusive, Defendant, Case No. 22CV017641, in the Superior Court Court of Alameda County, recorded September 15, 2022, as Instrument No. 2022158280, of Official Records.

23. The matters contained in an instrument entitled Tentative Agreement, dated July 26, 2019, by and between Priority Acquisitions Inc (Jeremy Musson) and Wilhelmina Hughes, upon the terms and conditions and covenants therein provided and recorded August 8, 2022, as Instrument No. 2022139663, of Official Records.

24. A claim of Mechanics Lien recorded August 29, 2022, as Instrument No. 2022149957, of Official Records, by Sunbelt Rentals, Inc., Claimant, in the amount of $42,989.04, and any other amounts due thereunder.

25. The matters contained in an instrument entitled Grant Deed, dated July 31, 2022, by and between Priority Acquisitions Inc., as to an undivided 33.34% interest, Louis Michael Liwanag, as to an undivided 33.33% interest and Alexander Miguel Songco Martin, as to an undivided 33.33% interest, as tenants in common, as grantor and Priority Acquisitions Inc. as to an undivided 76% interest, Louis Michael Liwanag, as to an undivided 13% interest, and Alexander Miguel Songco Martin, as to an undivided 13% interest, as tenants in common, as grantee, upon the terms and conditions and covenants therein provided and recorded January 24, 2023, as Instrument No. <u>2023007467</u>, of Official Records.

26. Any claim arising out of a bankruptcy proceeding that is not disclosed by notice pursuant to U.S.C. § 549 (c).

NOTE: If the property which is the subject of this report or guarantee has been used, is being used, or was acquired with the intent that it be used in connection with a marijuana related enterprise, including but not limited to the cultivation, storage, distribution, transport, manufacture or sale of marijuana and/or products containing marijuana, the federal government (or the state or local government if such use is deemed to be noncompliant with state or local law) may claim a preeminent right to the property automatically effective as of the date of the use which it deems illegal. Nothing in this report or guarantee provides assurances against the exercise of such a governmental forfeiture, regulatory or police power, and further, Company expressly reserves the right to decline to close or insure such a property following the completion of any litigation or foreclosure action conducted on said property. You are advised to consult your legal counsel on whether it is required, advisable, or inadvisable to give notice to the Federal and/or State government in order to address potential forfeiture issues.

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

The land referred to is situated in the unincorporated area of the County of Alameda, State of California, and is described as follows:

Parcel One:

Portion of the land shown on the Map of "Record of Survey, Portion of Elizabeth G. Parsons Estate," filled January 11, 1946, in Book 2 of Licensed Surveys, Pages 16, 17 and 18, described as follows:

Beginning at a point on the center line of Ewing Road distant thereon North 2° 25' 52" West 256 feet from the center line of Parsons Road, as said roads are shown on said Map; and running thence along the center line of said Ewing Road North 2° 25' 52" West 105.12 feet, and Northwesterly tangent with the last named course on a curve to the left with a radius of 400 feet, 15 to the true point of beginning; thence continuing along said course, 109.88 feet; thence South 68° 40' 45" West 581.33 feet; thence South 40° 13' East 35 feet; and thence North 76° 24' 45" East 558.18 feet to the true point of beginning.

APN: 084D-1250-022

Parcel Two:

A portion of that Parcel described in the Grant Deed from John J. Tarabochia and Mary A. Tarabochia to Lee Gentili and Edith Janet Gentili, recorded June 6, 1960, on Reel 101, at image 112, under series no. AR65677, Alameda County Records, being more particularly described as follows:

Commencing at a point on the centerline of Ewing Road distant thereon Northwesterly 645.82 feet from the centerline of Parsons Road, as said roads are shown on aforesaid record of survey map, said point of commencement being the most Northern corner of aforesaid Gentili Parcel; thence along the Northwestern line of said Parcel South 60° 42' 40" West 425.73 feet to a point distant thereon North 60° 42' 40" East 164.00 from the most Western corner of said Parcel, last said point being the actual point of beginning; thence continuing along said Northwestern line South 60° 42' 40" West 164.00 feet to said most Western corner; thence along the Southwestern line of said Parcel South 40° 13' 00" East,80.01 feet to the Southeastern line of said Parcel; thence along said Last line North 68° 42' 05" East 162.40 feet to a line drawn South 36° 03' 00" East from the actual point of beginning; thence along last said drawn line North 36° 03' 00" west 101.84 feet to the actual point of beginning.

APN: 084D-1250-021-03

Pursuant to that certain Certificate of Compliance and Lot Line Adjustment PLN 2020-00274 recorded January 24, 2022 as Instrument No. 2022015927, Official Records, the above Parcels One and Two are now known as follows:

Adjusted Parcel One:

Portion of APN: 084D-1250-022

All that certain real property situated in the unincorporated area of the Township of Eden, County of Alameda, State of California, described as follows:

A portion of the land shown on the map of "Record 'of Survey, Portion of Elizabeth G. Parsons Estate, etc.", filed January 11, 1946, in Book 2 of Records of Survey, at Pages 16 through 18, Alameda County Records, described as follows:

A portion of that parcel described in the grant deed from Jennifer L. Stevenson. Trustee of The Robert L. Stevenson Living Trust dated 4/26/94 to Priority Acquisitions, Inc., recorded March 21, 2016, at Series No. 2016 066766, Alameda County Records, being more particularly described as follows:

Commencing at the intersection of the centerline of Ewing Road (50 foot wide RIW) with the centerline of Proctor Road (50 foot wide RAN, formerly known as Parsons Road) as said roads are shown on aforesaid Record of Survey; thence along said centerline of Ewing Road North 2°25'52" West 361.07 feet; thence continuing along last said centerline northeasterly on a tangent curve to the left, with a radius of 400 feet, through a central angle of 2°08'55", an arc distance of 15.00 feet to the southeastern line of aforesaid parcel (2016 066766); thence continuing along said centerline curve, through a central angle of 4°35'25", an arc distance of 32.06 feet to the True Point of Beginning; thence continuing along said centerline curve, through a central angle of 11°08'56", an arc distance of 77.83 feet to the northwestern line of said parcel (2016 166766); thence along last said line South 68°42'05" West 272.25 feet; thence South 13°33'52" East 48.88 feet to a line drawn parallel with and 24.00 feet northwesterly of said southeastern line of said parcel (2016 066766); thence along said parallel line North 76°26'08" East 195.30 feet; thence northeasterly on a tangent curve to the left, with a radius of 100 feet, through a central angle of 14°05'10", an arc distance of 24.58 feet; thence North 62°20'58" East 27.65 feet to the northwestern line of said Ewing Road; thence North 80°49'48" East 25.00 feet to the True Point of Beginning.

Adjusted Parcel Two.

APN: 084D-1250-021-03 and
Portion of APN: 084D-1250-022

All that certain real property situated in the unincorporated area of the Township of Eden, County of Alameda, State of California, described as follows:

A portion of the land shown on the map of "Record of Survey, Portion of Elizabeth G. Parsons Estate, etc", filed January 11946, in Book 2 of Records of Survey. at Pages 16 through 18, Alameda County Records, described as follows:

All of that parcel described in the grant deed from Wilhelmina Hughes to Priority Acquisitions, Inc., hereinafter referred to as "Parcel A" for purposes of this description, recorded August 01, 2019, at Series No. 2019 148444, Alameda County Records, and a portion of that parcel described in the grant deed from Jennifer L. Stevenson, Trustee of The Robert L. Stevenson Living Trust dated 4/26/94 to Priority Acquisitions, Inc., hereinafter referred to as "Parcel B" for purposes of this description, recorded March 21, 2016, at Series No. 2016 066766, Alameda County Records, being more particularly described as follows:

Commencing at the intersection of the centerline of Ewing Road (50 foot wide RNV) with the centerline of Proctor Road (50 foot wide RIW, formerly known as Parsons Road) as said roads are shown on aforesaid Record of Survey; thence along said centerline of Ewing Road North 2°25'52" West 361.07 feet; thence continuing along last said centerline northeasterly on a tangent curve to the left, with a radius of 400 feet, through a central angle of 2°08'55", an arc distance of 15.00 feet to a point on the southeastern line of aforesaid "Parcel B" (2016 066766) last said point being the True Point of Beginning; thence along last said line South 76°26'08" West 558.19 feet to the southwestern line of said "Parcel B"; thence along said last line and the southwestern line of aforesaid "Parcel A" (2019 148444) North 40°13'00" West 115.01 feet to the northwestern line of said "Parcel A"; thence along last said line North 60°42'40" East 164.00 feet to the northeastern line of said "Parcel A"; thence along last said line South 36°03'00" East 101.84 feet to the northwestern line of said "Parcel B"; thence along last said line North 68°42'05" East 146.66 feet to a point distant thereon South 68°42'05" West 272.25 feet from aforesaid centerline of Ewing Road; thence South 13°33'52" East 48.88 feet to a line drawn parallel with and 24.00 feet northwesterly of aforesaid southeastern line of "Parcel B"; thence along said parallel line North 76°29'08" East 195.30 feet; thence northeasterly on a tangent curve to the left, with a radius of 100.00 feet, through a central angle of 14°05'10", an arc distance of 24.58 feet; thence North 62°20'58" East 27.65 feet to the northwestern line of said Ewing Road; thence North 80°49'48" East 25.00 feet to a point on the aforedescribed 400 foot radius centerline of Ewing Road the Centerpoint of which bears South 80°49'48" West from last said point; thence southeasterly along said centerline on curve to the right, through a central angle of 4°35'25", an arc distance of 32.06 feet to the True Point of Beginning.

NOTE: For information purposes only, for which the Company assumes no liability for any inaccuracies or omissions, the purported street address of said land as determined from the latest County Assessor's Roll is:

4701 & 4747 EWING ROAD, Castro Valley, CA 94546



**WFG NATIONAL TITLE INSURANCE COMPANY**

## EXCLUSIONS FROM COVERAGE

1. Except to the extent of the assurances set forth in Paragraph 3 of Schedule A, the Company assumes no liability for loss or damage by reason of any law, ordinance, governmental regulation or any other police power adopted or promulgated by any federal or state government authority purporting to regulate non-judicial foreclosures or any related duties, whether or not disclosed by the Public Records at the Date of Guarantee.

2. Notwithstanding any assurances set forth in Paragraph 3 of Schedule A, the Company assumes no liability for loss or damage by reason of the following:

(a) Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the Land expressly described in the description set forth in Schedule A of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such Land abuts, or the right to maintain therein vaults, tunnels, ramps or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.

(b) Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the Public Records (1) that are created, suffered, assumed or agreed to by one or more of the Assureds; (2) that result in no loss to the Assured; or (3) that do not result either in the invalidity of any non-judicial proceeding to foreclose the lien of the Mortgage or the failure of any such non-judicial foreclosure proceeding to divest a lien, estate or interest subordinate or subject to the lien of the Mortgage.

(c) Defects, liens, encumbrances, adverse claims or other matters against the title, not shown by the Public Records.

(d) The identity of any party shown or referred to in Schedule A.

(e) The validity, legal effect or priority of any matter shown or referred to in this Guarantee.

(f) Any law, ordinance, governmental regulation or any other police power adopted or promulgated by any county, city, or any other local government authority purporting to regulate non-judicial foreclosures or any related duties, whether or not disclosed by the Public Records at the Date of Guarantee.

(g) (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the Public Records.

(h) (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the Public Records.

# WFG NATIONAL TITLE INSURANCE COMPANY

## INFORMATIONAL NOTES

No assurances as set forth in Paragraph 3 of Schedule A are provided in connection with the following information and the Company assumes no liability for any inaccuracies in or omissions from the information. This information is not intended to be comprehensive and does not necessarily include all laws and regulations that might affect the contemplated foreclosure.

1. Attention is called to Article I commencing with California Civil Code Sections 2920 et. seq, of Chapter 2, Title 14, Part 4, Division 3, that govern the actions of mortgagees, beneficiaries, mortgage servicers, trustees, and their agents with respect to non-judicial foreclosures.

2. Attention is called to the Servicemembers Civil Relief Act (SCRA) (*50 USC §§3901 et seq.*), the Military Reservist Relief Act of 1991 (*California Military and Veterans Code §§ 800 et seq.*), and Military and Veterans Code § 408, that contain restrictions against the sale of land under a deed of trust or mortgage if the owner is entitled to the benefits of those laws.

3. Attention is called to the Federal Tax Lien Act of 1966 (26 USC §§ 6321 et seq.), that, among other things, provides for the giving of written notice of sale in a specified manner to the Secretary of Treasury or his or her delegate as a requirement for the discharge or divestment of a Federal Tax Lien in a non-judicial sale, and establishes with respect to that lien a right in the United States to redeem the property within a period of 120 days from the date of the sale.

4. Attention is called to California Government Code § 16187, that, among other things, provides for the giving of written notice of sale in a specified manner to the Controller of the State of California necessary for the discharge or divestment in a non-judicial sale of a Notice of Lien for Postponed Property Taxes recorded in the public records subsequent to the recording of a notice of default.

## TRUSTEE'S SALE GUARANTEE CONDITIONS

1. **Definition of Terms.**
   The following terms when used in the Guarantee mean:
   (a) the "Assured": (i) the party or parties named as the Assured in Schedule A, or on a supplemental writing executed by the Company, (ii) the duly substituted trustee of the Mortgage and (iii) the owner of the indebtedness or other obligation secured by the Mortgage.
   (b) "Land": the Land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "Land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.
   (c) "Mortgage": the mortgage, deed of trust, trust deed, or other security instrument set forth in Paragraph 3.d. of Schedule A.
   (d) "Public Records": those records established under California statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.
   (e) "Date of Guarantee": the Date of Guarantee set forth in Schedule A

2. **Notice of Claim to be Given by Assured.**
   The Assured shall notify the Company promptly in writing in case knowledge shall come to the Assured of any assertion of facts, or claims of title or interest that are contrary to the assurances set forth in Paragraph 3 of Schedule A and that might cause loss or damage for which the Company may be liable under this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of the Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

3. **No Duty to Defend or Prosecute.**
   The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

4. **Company's Option to Defend or Prosecute Actions; Duty of Assured to Cooperate.**
   Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:
   (a) The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in Paragraph 4.b. or to do any other act which in its opinion may be necessary or desirable to establish the correctness of the assurances set forth in Paragraph 3 of Schedule A or to prevent or reduce loss or damage to the Assured including, but not limited to, repeating the trustee's sale proceeding. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.
   (b) If the Company elects to exercise its options as stated in Paragraph 4.a. the Company shall have the right to select counsel of its choice (subject to the right of the Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred by the Assured in the defense of those causes of action which allege matters not covered by this Guarantee.
   (c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.
   (d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, the Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the Assured for this purpose. Whenever requested by the Company, the Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of Company may be necessary or desirable to establish the correctness of the assurances set forth in Paragraph 3 of Schedule A. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

Case 1:07-cv-07651   Doc# 23-4   Filed: 05/09/24   Entered: 05/09/24 16:18:27   Page 59
of 85

**5. Proof of Loss or Damage.**

    (a) In addition to and after the notices required under Section 2 of these Conditions have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to the Assured under the Guarantee shall terminate.

    (b) The Company may reasonably require the Assured to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Guarantee, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Assured provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee as to that claim.

**6. Options to Pay or Otherwise Settle Claims: Termination of Liability.**

In case of a claim under this Guarantee, the Company shall have the following additional options:

    (a) To Pay or Tender Payment of the Amount of Guarantee or to Purchase the Indebtedness.

        i. To pay or tender payment of the full amount of this Guarantee together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay; or

        ii. To purchase the indebtedness secured by the Mortgage for the amount owing thereon, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company so purchases such indebtedness, the owner thereof shall transfer, assign, and convey to the Company the indebtedness and the Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in Paragraphs 6.a.i. or 6.a.ii., all liability and obligations of the Company to the Assured under this Guarantee, other than to make the payment required in those paragraphs, shall terminate, including any duty to continue any and all litigation initiated by Company pursuant to Paragraph 4.

    (b) To Pay or Otherwise Settle With Parties Other Than the Assured or With the Assured.

        i. To pay or otherwise settle with other parties for or in the name of an Assured any claim assured against under this Guarantee. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

        ii. To pay or otherwise settle with the Assured the loss or damage provided for under this Guarantee, together with any costs, attorneys' fees, and expenses incurred by the Assured that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in Paragraphs 6. b.i. or 6.b.ii., the Company's obligations to the Assured under this Guarantee for the claimed loss or damage, other than the payments required to be made, shall terminate, including any duty to continue any and all litigation initiated by Company pursuant to Paragraph 4.

7. **Limitation of Liability.**
This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured who has suffered loss or damage by reason of reliance upon the assurances set forth in Paragraph 3 of Schedule A and only to the extent herein described, and subject to the Exclusions From Coverage and Conditions of this Guarantee.
   (a) The liability of the Company under this Guarantee to the Assured shall not exceed the least of:
      i. the amount of liability stated in Schedule A;
      ii. the amount of the unpaid principal indebtedness secured by the Mortgage as limited or as reduced under Paragraph 8 of these Conditions at the time the loss or damage assured against by this Guarantee occurs, together with interest thereon; or
      iii. the difference between the value of the estate or interest set forth in Schedule A and the value of the estate or interest subject to any defect, lien, encumbrance or other matter assured against by this Guarantee..
   (b) If the Company or the Assured under the direction of the Company at the Company's expense establishes the title, or removes the alleged defect, lien or, encumbrance or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.
   (c) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom.
   (d) The Company shall not be liable for loss or damage to the Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

8. **Reduction of Liability or Termination of Liability.**
All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

9. **Payment of Loss.**
   (a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.
   (b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions the loss or damage shall be payable within thirty (30) days thereafter.

10. **Subrogation Upon Payment or Settlement.**
Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured.
The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.
If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

11. **Arbitration.**
Either the Company or the Assured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service in connection with its issuance or the breach of a Guarantee provision, or to any other controversy or claim arising out of the transaction giving rise to this Guarantee. All arbitrable matters when the amount of liability in Schedule A is $2,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability in Schedule A is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. Arbitration pursuant to this Guarantee and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

Case 4:07-bk-00051   Doc# 23-4   Filed: 05/09/24   Entered: 05/09/24 16:18:27   Page 61 of 85

**12. Liability Limited to This Guarantee; Guarantee Entire Contract.**

    (a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company. In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.

    (b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.

    (c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**13. Notices, Where Sent.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at 12909 SW 68th Parkway, Suite 350, Portland, OR 97223. WFG National Title Insurance Company's telephone number is (800) 334-8885.



### Williston Financial Group Privacy Notice

Williston Financial Group LLC, WFG National Title Insurance Company, and each of the affiliates listed below (collectively "WFG" or the "WFG Family") believe it is important to protect your privacy and confidences. We recognize and respect the privacy expectations of our customers. We believe that making you aware of how we collect information about you, how we use that information, and with whom we share that information will form the basis for a relationship of trust between us. This Privacy Notice provides that explanation. We reserve the right to change this Privacy Notice from time to time.

WFG's primary business is providing appraisal, title insurance, and escrow services for the sale or refinance of real property. This can be a complicated process involving multiple parties, many of whom have been selected by our customers, each filling a specialized role. In part, you have hired WFG to coordinate and smooth the passage of the information necessary for an efficient settlement or closing.

In the course of this process, WFG collects a significant amount of personal and identifying information about the parties to a transaction, including sensitive items that include but are not limited to: your contact information, including email addresses, Social Security numbers, driver's license, and other identification numbers and information; financial, bank and insurance information; information about past and proposed mortgages and loans; information about properties you currently or previously owned; your mortgage application package; and the cookie, IP address, and other information captured automatically by computer systems.

Much of this information is gathered from searches of public land, tax, court and credit records to make certain that any liens, challenges or title defects are addressed properly. Some of the information that is collected is provided by you or the computer systems you use. We also may receive information from real estate brokers and agents, mortgage brokers and lenders, and others working to facilitate your transaction, as well as information from public, private or governmental databases including credit bureaus, 'no-fly' lists, and terrorist 'watch lists'.

#### What Information is Shared?

**WFG DOES NOT SELL any of your information to non-affiliated companies for marketing or any other purpose.**

However, some of the same information <u>does get shared</u> with persons inside and outside the WFG Family in order to facilitate and complete your transaction.

For example:

However, some of the same information <u>does get shared</u> with persons inside and outside the WFG Family in order to facilitate and complete current and future transactions.

For example:

- Information, draft documents, and closing costs will pass back and forth between WFG and your mortgage broker and lender to facilitate your transaction.
- Information, including purchase agreements and amendments, will pass back and forth between WFG and the real estate agents and brokers, the mortgage brokers and lenders, the lawyers and accountants, and others involved in facilitating the transaction.
- WFG may order property searches and examinations from title searchers, abstractors and title plants.
- WFG may use third parties to obtain tax information, lien information, payoff information, and condominium or homeowners' association information.
- Third parties may be engaged to prepare documents in connection with your transaction.
- Surveys, appraisals, and inspections may be ordered.
- Within the WFG Family of companies, we may divide up the work to handle each closing in the most efficient manner possible and to meet specific legal and licensing requirements. Certain parts of your closing (for example a search or disbursement) may be handled by another division or company within the WFG Family.

- When it is time for signatures, your complete closing package may be sent to a notary, remote online notary, or notary service company who will arrange to meet with you to sign documents. The notary will, in turn, send signed copies back to us along with copies of your driver's license or other identity documents, usually by mail, UPS, Federal Express or another courier service.
- Your deed, mortgage and other documents required to perfect title will be recorded with the local recorder of deeds.
- In some cases, we use an outside service to coordinate the recording or electronic-recording of those instruments, and they will receive copies of your deeds, mortgages and other recordable documents to process, scan and send on to the recording office.
- Information within your title policy may be shared with WFG National Title Insurance Company title policy issuing agents to facilitate future financial transactions involving your property.
- Various government agencies get involved. The law requires us to provide certain information to the IRS, the U.S. Department of the Treasury, local and state tax authorities, and other regulatory and governmental agencies.
- **WFG title policy issuing agents only**: personal information provided by you may be shared with a third party for the purposes of facilitating training to obtain CE/CLE credits.

You have a choice in the selection of a mortgage broker, lender, real estate broker or agent and others that make up your 'transaction team.' Information flows to and from the members of the transaction team you have selected to facilitate an efficient transaction for you.

When WFG selects and engages a third party provider, we limit the scope of the information shared with that third party to the information reasonably necessary for that service provider to provide the requested services. With most, we have entered into agreements in which they expressly commit to maintain a WFG customer's information in strict confidence and use the information only for purposes of providing the requested services, clearing title, preventing fraud and addressing claims under our title insurance policies.

## How does WFG use your Information?

We may use your personal information in a variety of ways, including but not limited to:

- Provide the products, services and title insurance you have requested, and to close and facilitate your transaction.
- Provide and use historic transaction information to facilitate future financial transactions.
- Coordinate and manage the appraisal process.
- Handle a claim or provide other services relating to your title insurance policies.
- Create, manage, and maintain your account.
- Operate and improve WFG's applications and websites, including WFG MyHome®, WFG's secure communication and transaction portal. Your information is used for access management, payment processing, site administration, internal operations, troubleshooting, data analysis, testing, research, and for statistical purposes.
- Respond to your requests, feedback or inquiries.
- Comply with laws, regulations, and other legal requirements.
- Comply with relevant industry standards and our policies, including managing WFG's risk profile through reinsurance.
- Protect and enforce your rights and the rights of other users against unlawful activity, including identity theft and fraud.
- Protect and enforce our collective rights arising under any agreements entered into between WFG and you or any other third party.
- Protect the integrity and maintain security of our applications, websites, and products.
- Operate, evaluate, and improve our business.
- Provide you with information about products, services, and promotions from WFG or third parties that may interest you.
- **WFG title policy issuing agents only**: Provide you with a training platform to obtain CE/CLE credits

## How Do We Store and Protect Your Personal Information?

Although no system can guarantee the complete security of your personal information, we will use our best efforts to maintain commercially reasonable technical, organizational, and physical safeguards, consistent with applicable law, to protect your personal information and our systems and sites from malicious intrusions or hacking.

## How Long Do We Keep Your Personal Information?

We keep your personal information for as long as necessary to comply with the purpose for which it was collected, our business needs, and our legal and regulatory obligations. We may store some personal information indefinitely. If we dispose of your personal information, we will do so in a way that is secure and appropriate to the nature of the information subject to disposal.

## Computer Information

When you access a WFG website, or communicate with us by e-mail, we may automatically collect and store more information than you are expressly providing when you fill out a survey or send an email.  This may include:

- Your IP Address.
- Your email address, your alias and, social media handles.
- The type of browser and operating system you use.
- The time of your visit.
- The pages of our site you visit.
- Cookies.

In order to provide you with customized service, we make use of Web browser cookies. Cookies are files that help us identify your computer and personalize your online experience. You may disable cookies on your computer, but you may not be able to download online documents or access certain websites unless cookies are enabled.

The technical information we collect is used for administrative and technical purposes and to prevent fraud and provide identity verification. For instance, we may use it to count the number of visitors to our website and determine the most popular pages. We may also use it to review types of technology you are using, determine which link brought you to our website, assess how our advertisements on other websites are working, help with maintenance, and improve our customers' experience.

We may compare information gathered on previous visits to verify that we are interacting with the same parties and not a potential imposter.

If we ask you to fill out any forms or surveys, we will use the information we receive only for the specific purposes indicated in those forms or surveys.

The information you and your transaction team send us in emails or attached to an email, or provide through any of our online tools, is used for purposes of providing title, escrow and appraisal management services and used for the purposes described above.

In addition to the above, if you use an eClosing platform to sign your real estate transaction additional information may be collected. This may include:

- Your IP address.
- Your location.
- Your email address and your alias.
- The type of browser and operating system you use.
- The time of your visit.
- Your biometrics.
- Your image.
- Video recording of your transaction signing.
- Transaction metadata.
- Cookies.

## Links to Third Party Sites

Our Applications and Websites may contain links to third-party websites and services. Please note that these links are provided for your convenience and information, and the websites and services may operate independently from us and have their own privacy policies or notices, which we strongly suggest you review. This Privacy Notice applies to WFG's applications and websites only.

**Do Not Track**

Because there is not an industry-standard process or defined criteria to permit a user to opt-out of tracking their online activities ("Do Not Track"), our websites do not currently change the way they operate based upon detection of a Do Not Track or similar signal. Likewise, we cannot assure that third parties are not able to collect information about your online activities on WFG websites or applications.

**Social Media Integration**

Our applications, websites, and products contain links to and from social media platforms. You may choose to connect to us through a social media platform, such as Facebook, Twitter, Google, etc. When you do, we may collect from the social media platform additional information from or about you, such as your screen names, profile picture, contact information, contact list, and the profile pictures of your contacts. The social media platforms may also collect information from you.

When you click on a social plug-in, such as Facebook's "Like" button, Twitter's "tweet" button, or the Google+, that particular social network's plug-in will be activated and your browser will directly connect to that provider's servers. Your action in clicking on the social plug-in causes information to be passed to the social media platform.

We do not have control over the collection, use and sharing practices of social media platforms. We therefore encourage you to review their usage and disclosure policies and practices, including their data security practices, before using social media platforms.

**How Can You "Opt-Out?"**

We do not sell your information; therefore there is no need to opt-out of such reselling. Under various laws, you can opt-out of the sharing of your information for more narrow purposes. For additional detail, consult the Links under the "Legal" Notices attached below.

**The "Legal" Notices**

To comply with various federal and state laws, we are required to provide more complete legal notices and disclosures – see links below. The state-specific statutes referenced therein may also give residents of those states additional rights and remedies.

**Privacy Notice for California Residents** - https://national.wfgnationaltitle.com/privacy-notice-california

**Privacy Notice for Oregon Residents** - https://national.wfgnationaltitle.com/privacy-notice-oregon

### How to Contact Us

If you have any questions about WFG's privacy notice or how we protect your information, please contact WFG:

- By email: Consumerprivacy@willistonfinancial.com
- By telephone: 833-451-5718
- By fax: 503-974-9596
- By mail: 12909 SW 68th Pkwy, Suite 350, Portland, OR 97223

**WFG FAMILY**
WILLISTON FINANCIAL GROUP LLC
WFG NATIONAL TITLE INSURANCE COMPANY
WFG LENDER SERVICES, LLC
WFGLS TITLE AGENCY OF UTAH, LLC
WFG NATIONAL TITLE COMPANY OF WASHINGTON, LLC
WFG NATIONAL TITLE COMPANY OF CALIFORNIA
WFG NATIONAL TITLE COMPANY OF TEXAS, LLC D/B/A WFG NATIONAL TITLE COMPANY
UNIVERSAL TITLE PARTNERS, LLC
VALUTRUST SOLUTIONS, LLC
MYHOME, A WILLISTON FINANCIAL GROUP COMPANY, LLC (formerly known as WILLISTON ENTERPRISE SOLUTIONS & TECHNOLOGY, LLC)
WFG NATIONAL TITLE COMPANY OF CLARK COUNTY, WA, LLC, D/B/A WFG NATIONAL TITLE

Rev 12.20.2022

| FACTS | WHAT DOES WILLISTON FINANCIAL GROUP DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and other government identification information<br>• Your name, address, phone, and email<br>• Information about the property, any liens and restrictions<br>• Financial Information including credit history and other debt<br>• Financial account information, including wire transfer instructions. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Williston Financial Group chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Williston Financial Group share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | No | We don't share |
| For our affiliates' everyday business purposes— information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes— information about your creditworthiness | No | We don't share |
| For our affiliates to market to you | No | We don't share |
| For nonaffiliates to market to you | No | We don't share |

| To limit our sharing | • Call 833-451-5718—our menu will prompt you through your choice(s)<br>• Visit us online: http://bit.ly/WFGsConsumerPrivacyInformationRequestPage or e-mailing us at consumerprivacy@willistonfinancial.com<br>• Mail the form below<br><br>Please note:<br><br>If you are a new customer, we can begin sharing your information from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice.<br>However, you can contact us at any time to limit our sharing. |
|---|---|
| Questions? | Call 833-451-5718 or Email consumerprivacy@willistonfinancial.com |

---

| Mail-In Form | |
|---|---|
| If you have a joint policy, your choices will apply to everyone on your account. | Mark any/all you want to limit:<br>[ ] Do not share information about my creditworthiness with your affiliates for their everyday business purposes.<br>[ ] Do not allow your affiliates to use my personal information to market to me.<br>[ ] Do not share my personal information with nonaffiliates to market their products and services to me. |

| Name | | Mail to: |
|---|---|---|
| **Address** | | Williston Financial Group |
| | | PRIVACY DEPT |
| **City, State, Zip** | | 12909 SW 68th Pkwy, #350 |
| **File Number** | | Portland, OR 97223 |

WFG Privacy Policy

| **Who we are** | |
|---|---|
| Who is providing this notice | Williston Financial Group, LLC and its affiliates and subsidiaries as listed below: |

| **What we do** | |
|---|---|
| How does Williston Financial Group protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We limit access to your information to employees that need to use the information to process or protect transaction. We take industry standard (IPSEC) measures to protect against malicious intrusions or hacking |
| How does Williston Financial Group collect my personal information? | We collect your personal information, for example, when you<br>• Apply for insurance<br>• Engage us to provide appraisal, title and escrow services<br>• Give us your contact information<br>• Provide your mortgage information<br>• Show your driver's license<br><br>We also collect your personal information from others, such as real estate agents and brokers, mortgage brokers, lenders, credit bureaus, affiliates, and others |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes—information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your policy. |

| **Definitions** | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br><br>Our affiliates include companies with a common corporate identity, including those listed below. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br><br>Nonaffilliates we share with can include real estate agents and brokers, mortgage brokers, lenders, appraisers, abstractors and title searchers and others as appropriate to facilitate your transaction. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br><br>Williston Financial Group does not jointly market. |

| **Other important information** |
|---|
| As a resident or citizen of certain states, we may have to provide additional state specific privacy notices and you may have rights other than as set forth above. The links below will provide state specific information:<br><br>**Privacy Notice for California Residents** - https://national.wfgnationaltitle.com/privacy-notice-california<br>**Privacy Notice for Oregon Residents** - https://national.wfgnationaltitle.com/privacy-notice-oregon |

Case: 23-41651    Doc# 23-4    Filed: 05/09/24    Entered: 05/09/24 16:18:27    Page 68 of 85

EXHIBIT "11"



**R** | City, Address, School, /    Buy ▾    Rent ▾    Sell ▾    Redfin Premier    Mortgage ▾    Real Estate Agents ▾    Feed    | Join / Sign In |

OFF MARKET

← Search    **Overview**    Property details    Sale & tax history    Public Facts    Schools    Climate    ♡ Favorit



Street View

**Cookies and your choices**

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. By using our site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and **Privacy Policy**. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising.

Cookie settings

OFF MARKET

**4747 Ewing Rd**, Castro Valley, CA 94546



**$1,180,517**
Redfin Estimate

**2**
Beds

**2**
Baths

**1,811**
Sq Ft

## Is this your home?

Track this home's value and nearby sales activity

| I own 4747 Ewing Rd |

## Thinking of selling?

Estimated sale price

**$1.12M – $1.33M**

Reach more buyers when you sell with Redfin. Plus, you'll save **$11,805** in fees. ⓞ

| Schedule a selling consultation |

Get an in-depth report about your home value and the Castro Valley market.

| Request a free analysis |

## About this home

4747 Ewing Rd is a 1,811 square foot house on a 0.37 acre lot with 2 bedrooms and 2 bathrooms. This home is currently off market. Based on Redfin's Castro Valley data, we estimate the home's value is $1,180,517.

🏠 Single-family

🛠 Built in 1947, renovated in 1953

▦ 0.37 acres

✎ $652 Redfin Estimate per sq ft

Source: Public Records

## Redfin Estimate for 4747 Ewing Rd

Redfin has the most accurate online home estimate ⓘ

**$1,180,517**

▾ $87K since March



Claim this home to track its value

## Cookies and your choices

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. By using our site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and **Privacy Policy**. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising.

Case: 23-41651   Doc# 23-4   Filed: 05/09/24   Entered: 05/09/24 16:18:27   Page 71 of 85




**$980,000** Last Sold Price

3 beds   2 baths   1,570 sq ft
4720 Hillside Dr, Castro Valley, CA 94546

- — $28/sq ft
- ↓ smaller lot
- ↓ 5 years older

**$1,230,000** Sold Price

3 beds   2 baths   1,465 sq ft
18983 Lake Chabot Rd, Castro Valley, CA 94546

- + $188/sq ft
- ↓ smaller lot
- ↓ 2 years older

---

[ **View comparables on map** ]

**More resources**


**Home sale earnings**
Est. $1.12M when you sell with Redfin                                    >


**Rental earnings**
Est. $3,975 per month, based on comparable rentals                       >


**Upper Castro Valley real estate market**
Homes go pending in 14 days                                              >

Advertisement                                                    Report ad

**Homeowner Tools**

✎ **Edit home facts**
Review property details and add renovations.

📷 **Manage photos**
Update home photos or make them private.

🏛 **Create an Owner Estimate**

**Cookies and your choices**

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics,
advertise to you or others, and to share information about your use of our site with third-parties. By using our
site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and
**Privacy Policy**. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted
advertising.

 **Electricity and solar**
View estimated energy costs and solar savings for this home

 **Internet**
View Internet plans and providers available for this home

Provided by Down Payment Resource, Wattbuy, and AllConnect ⓘ



# Property details for 4747 Ewing Rd

## Interior

### Room Information
- # of Rooms: 5

## Exterior

### Exterior Information
- Physical Condition: Poor
- Building Style Type: L-Shape
- Construction Type: Wood
- Building Construction Quality: Average

### Property Information
- Living Sq. Ft: 1,811
- Building Sq. Ft: 1,811

- # of Units: 1
- # of Stories: 2

### Lot Information
- # of Buildings: 1
- Land Sq. Ft: 16,008
- Municipality Name: CASTRO VALLEY UNINCORP
- Acres: 0.3675
- County Use Description: SINGLE FAMILY RESIDENTIAL HOME

## Financial

### Assessor Information
- Assessment Year: 2023

## Cookies and your choices

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. By using our site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and **Privacy Policy**. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising.

Sale History                                    **Tax History**

As the MLS and public records start to fill up, we'll list the details here.

## Public facts and zoning for 4747 Ewing Rd

| | | | |
|---|---|---|---|
| Beds | 2 | Style | Single Family Residential |
| Baths | 2 | Year Built | 1947 |
| Sq. Ft. | 1,811 | Year Renovated | 1953 |
| Stories | 2 | County | Alameda County |
| Lot Size | 0.37 Acres | APN | 084D125002202 |

Home facts updated by county records on Mar 25, 2024.

### Additional resources

**Zoning**                                                            >
R1 | Permitted: Single-Family, ADU, Commercial

Advertisement                                                    Report ad

## Schools

| | | |
|---|---|---|
| 8/10 | **Proctor Elementary School**<br>Public, K-5 • 0.7mi | > |
| 7/10 | **Creekside Middle School**<br>Public, 6-8 • 1.9mi | > |
| 5/10 | **Canyon Middle School**<br>Public, 6-8 • 2.1mi | > |

### Cookies and your choices

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. By using our site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and **Privacy Policy**. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising.

## Around this home

Redfin  >  California  >  Alameda County  >  94546

**Transportation near 4747 Ewing Rd**

**25**/100

Car-dependent
Walk Score®

**15**/100

Minimal transit
Transit Score®

**25**/100

Somewhat bikeable
Bike Score®

Advertisement                                                                                    Report ad

## Climate risks

### About climate risks

Most homes have some risk of natural disasters, and may be impacted by climate change due to rising temperatures and sea levels.

**Risk Factor** ⓘ



**Flood Factor**
We're working on getting current and accurate flood risk information for this home.



**Fire Factor**
We're working on getting current and accurate fire risk information for this home.

**Heat Factor**
We're working on getting current and accurate heat risk information for this home.



**Wind Factor**
We're working on getting current and accurate wind risk information for this home.

**Air Factor**

### Cookies and your choices

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. By using our site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and **Privacy Policy**. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising.

OPEN SAT, 1PM TO 3PM

3D WALKTHROUGH

**$1,325,000**

3 beds  2.5 baths  2,220 sq ft
17641 Trenton Dr, Castro Valley, CA 94546

**$1,299,888**

3 beds  2 baths  1,829 sq ft
2962 Massachusetts St, Castro Valley, CA 94546

**$1,799,888**

5 beds  3 baths  3,013 sq ft
4478 Ewing Rd, Castro Valley, CA 94546

OPEN FRI, 5PM TO 7PM

OPEN SAT, 1PM TO 4PM

OPEN SAT, 1PM TO 4PM

**$1,175,000**

3 beds  2 baths  1,699 sq ft
16083 Cambrian Dr, San Leandro, CA 94578

**$1,799,990**

4 beds  2.5 baths  2,304 sq ft
16996 Grovenor Dr, Castro Valley, CA 94546

**$1,629,000**

4 beds  3 baths  2,871 sq ft
18482 Dominic Ln, Castro Valley, CA 94546

> **View more homes**

## Nearby recently sold homes

Nearby homes similar to 4747 Ewing Rd have recently sold between $885K to $1M at an average of $715 per square foot.

SOLD FEB 27, 2024    3D WALKTHROUGH

SOLD FEB 13, 2024

SOLD MAR 5, 2024

**$1,450,000** Last Sold Price

3 beds  2.5 baths  2,311 sq ft
19105 Santa Maria Ave, Castro Valley, CA 94546

**$1,345,000** Last Sold Price

4 beds  2 baths  1,760 sq ft
4470 Seven Hills Rd, Castro Valley, CA 94546

**$1,025,000** Last Sold Price

3 beds  2 baths  1,250 sq ft
19112 Parsons Ave, Castro Valley, CA 94546

## Cookies and your choices

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. By using our site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and **Privacy Policy**. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising.

Show more ⌄

## More real estate resources

| New Listings in 94546 | Cities | Zip Codes | Neighborhoods | Popular Searches |
|---|---|---|---|---|

5308 Camino Alta Mira

4351 Circle Ave

21259 Sweet Ln

3097 Massachusetts

17641 Trenton Dr

2995 Sydney Way

21165 Walker Ct

19513 Yuma St

2962 Massachusetts St

17100 Rolando Ave

All 94546 New Listings

## Frequently asked questions for 4747 Ewing Rd

What is 4747 Ewing Rd?  ⌄

How much is this home worth?  ⌄

When was this home built and last sold?  ⌄

What is the rental estimate for this home?  ⌄

How competitive is the market for this home?  ⌄

What comparable homes are near this home?  ⌄

What's the full address of this home?  ⌄

What's the housing market like in Castro Valley?  ⌄

**Join us**

Become an Agent

Get referrals

Careers

**About us**

Why Redfin?

Community Impact

Diversity & Inclusion

**Find us**

Contact Us

Help Center

🅕 ✖ 🅟 🅘

Copyright: © 2024 Redfin. All rights reserved.

Updated January 2023: By searching, you agree to the **Terms of Use**, and **Privacy Policy.**

**Do not sell or share my personal information.**

REDFIN and all REDFIN variants, TITLE FORWARD, WALK SCORE, and the R logos, are trademarks of Redfin Corporation, registered or pending in the USPTO.

## Cookies and your choices

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. By using our site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and **Privacy Policy.** Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising.



🇨🇦 Canada

**REDFIN IS COMMITTED TO AND ABIDES BY THE FAIR HOUSING ACT AND EQUAL OPPORTUNITY ACT. READ REDFIN'S FAIR HOUSING POLICY AND THE NEW YORK STATE FAIR HOUSING NOTICE.**

GreatSchools Ratings provided by **GreatSchools.org.**

## Cookies and your choices

We use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. By using our site, you agree to our use of Cookies to collect and share your information, and to our **Terms of Use** and **Privacy Policy**. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising.

EXHIBIT "12"

| Debtor 1 | **Jeremy Ryan Musson** | | |
| --- | --- | --- | --- |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: NORTHERN DISTRICT OF CALIFORNIA

Case number   **23-41036**

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                           12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest in

1.  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
■ Yes. Where is the property?

| 1.1 | **16996 Grovenor Dr** | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| --- | --- | --- | --- |

**16996 Grovenor Dr**
Street address, if available, or other description

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative

☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| **Castro Valley** | **CA** | **94546-0000** |
| --- | --- | --- |
| City | State | ZIP Code |

| Current value of the entire property? | Current value of the portion you own? |
| --- | --- |
| **$1,750,000.00** | **$1,750,000.00** |

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

**Alameda**
County

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number:

2.  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..............................................=>   |   **$1,750,000.00**

**Part 2:**  Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

EXHIBIT "13"



**ALAMEDA COUNTY, CA**
**acgov.org**

# Property Taxes

Treasurer-Tax Collector | Business License

Payment Reminders

**Pay / Look Up Property Taxes Online**

Other Ways to Pay

Application Forms

Secured Monthly Payments

## Search Secured, Supplemental and Prior Year Delinquent Property Taxes

Secured tax bills are payable online from 10/4/2023 to 7/1/2024.
Most supplemental tax bills are payable online to 7/1/2024.
Prior Year Delinquent tax payments are payable online to 7/1/2024.

| Property Summary | | New Search |
|---|---|---|
| APN: 84D-1250-22 | | |
| Property Address: 4747 EWING RD, CASTRO VALLEY 94546-1017 | | |

### Property Assessment Information

#### Prior Year Tax History

| Tax Type | Bill Year | Tracer | Total Amount | Options |
|---|---|---|---|---|
| Installment | Due Date | | Installment Amount | Status/Status Date |
| Secured | 2022-2023 | 23577200 | $16,157.36 | View Bill |
| 1st Installment | 12/10/2022 | | $8,073.68 | |
| 2nd Installment | 04/10/2023 | | $8,083.68 | |
| Secured | 2021-2022 | 23522300 | $15,751.36 | View Bill |
| 1st Installment | 12/10/2021 | | $7,870.68 | |
| 2nd Installment | 04/10/2022 | | $7,880.68 | |
| Secured | 2020-2021 | 23448700 | $15,394.84 | View Bill |
| 1st Installment | 12/10/2020 | | $7,692.42 | |
| 2nd Installment | 04/10/2021 | | $7,702.42 | |
| Secured | 2019-2020 | 23420000 | $14,978.25 | View Bill |
| 1st Installment | 12/10/2019 | | $7,127.74 | Paid Nov 15, 2019 |
| 2nd Installment | 04/10/2020 | | $7,850.51 | |
| Secured | 2018-2019 | 23394500 | $15,250.42 | View Bill |
| 1st Installment | 12/10/2018 | | $7,620.21 | Redeemed Nov 6, 2019 |
| 2nd Installment | 04/10/2019 | | $7,630.21 | Redeemed Nov 6, 2019 |
| Secured | 2017-2018 | 23304300 | $14,853.58 | View Bill |
| 1st Installment | 12/10/2017 | | $7,421.79 | Redeemed Nov 6, 2019 |
| 2nd Installment | 04/10/2018 | | $7,431.79 | Redeemed Nov 6, 2019 |
| Secured | 2016-2017 | 23240300 | $2,093.02 | View Bill |
| 1st Installment | 12/10/2016 | | $1,041.51 | Redeemed Nov 6, 2019 |
| 2nd Installment | 04/10/2017 | | $1,051.51 | Redeemed Nov 6, 2019 |
| Secured | 2015-2016 | 23206500 | $1,769.14 | View Bill |
| 1st Installment | 12/10/2015 | | $884.57 | Paid Dec 1, 2015 |
| 2nd Installment | 04/10/2016 | | $884.57 | Paid Mar 25, 2016 |
| Secured | 2014-2015 | 23180700 | $1,722.94 | View Bill |
| 1st Installment | 12/10/2014 | | $861.47 | Paid Nov 26, 2014 |
| 2nd Installment | 04/10/2015 | | $861.47 | Paid Mar 13, 2015 |
| Secured | 2013-2014 | 23157200 | $1,687.00 | View Bill |
| 1st Installment | 12/10/2013 | | $843.50 | Paid Dec 2, 2013 |
| 2nd Installment | 04/10/2014 | | $843.50 | Paid Mar 12, 2014 |
| Secured | 2012-2013 | 23189000 | $1,643.60 | View Bill |
| 1st Installment | 12/10/2012 | | $821.80 | Paid Dec 4, 2012 |
| 2nd Installment | 04/10/2013 | | $821.80 | Paid Mar 12, 2013 |
| Secured | 2011-2012 | 23174300 | $1,619.40 | View Bill |
| 1st Installment | 12/10/2011 | | $809.70 | Paid Dec 2, 2011 |
| 2nd Installment | 04/10/2012 | | $809.70 | Paid Mar 13, 2012 |
| Secured | 2010-2011 | 23154300 | $1,604.60 | View Bill |
| 1st Installment | 12/10/2010 | | $802.30 | Paid Nov 23, 2010 |
| 2nd Installment | 04/10/2011 | | $802.30 | Paid Mar 15, 2011 |
| Secured | 2009-2010 | 23111000 | $1,520.32 | View Bill |
| 1st Installment | 12/10/2009 | | $760.16 | Paid Dec 2, 2009 |

Case: 23-41651   Dpc# 23-4   Filed: 05/09/24   Entered: 05/09/24 16:18:27   Page 82 of 85

Search Secured Supplemental Property Taxes

| | | | | | |
|---|---|---|---|---|---|
| 2nd Installment | 04/10/2010 | | $760.16 | | Paid Mar 16, 2010 |
| Secured | 2008-2009 | 23048200 | $1,433.44 | View Bill | |
| 1st Installment | 12/10/2008 | | $716.72 | | Paid Dec 2, 2008 |
| 2nd Installment | 04/10/2009 | | $716.72 | | Paid Mar 17, 2009 |
| Secured | 2007-2008 | 22809000 | $1,392.24 | View Bill | |
| 1st Installment | 12/10/2007 | | $696.12 | | Paid Nov 13, 2007 |
| 2nd Installment | 04/10/2008 | | $696.12 | | Paid Mar 17, 2008 |
| Secured | 2006-2007 | 22648200 | $1,329.62 | View Bill | |
| 1st Installment | 12/10/2006 | | $664.81 | | Paid Nov 30, 2006 |
| 2nd Installment | 04/10/2007 | | $664.81 | | Paid Mar 14, 2007 |
| Secured | 2005-2006 | 22470700 | $1,277.72 | View Bill | |
| 1st Installment | 12/10/2005 | | $638.86 | | Paid Nov 30, 2005 |
| 2nd Installment | 04/10/2006 | | $638.86 | | Paid Mar 28, 2006 |
| Secured | 2004-2005 | 22339300 | $1,202.82 | View Bill | |
| 1st Installment | | | $601.41 | | Paid Dec 3, 2004 |
| 2nd Installment | | | $601.41 | | Paid Mar 31, 2005 |
| Supplemental | 2016-2017 | 60348900 | $2,871.58 | View Bill | |
| 1st Installment | 12/12/2016 | | $1,430.79 | | Redeemed Nov 6, 2019 |
| 2nd Installment | 04/10/2017 | | $1,440.79 | | Redeemed Nov 6, 2019 |
| Supplemental | 2016-2017 | 60349000 | $12,052.22 | | |
| 1st Installment | 12/12/2016 | | $6,021.11 | | Redeemed Nov 6, 2019 |
| 2nd Installment | 04/10/2017 | | $6,031.11 | | Redeemed Nov 6, 2019 |



Alameda County © 2020 • All Rights Reserved • Legal / Disclaimers • Accessibility

EXHIBIT "14"

ALAMEDA COUNTY, CA
**acgov.org**

P r o p e r t y   T a x e s                    Treasurer-Tax Collector | Business License

Payment Reminders

**Pay / Look Up Property Taxes Online**

Other Ways to Pay

Application Forms

Secured Monthly Payments

## Payment Options

## IMPORTANT: PLEASE CONFIRM THAT THIS IS YOUR BILL BEFORE PAYING

| Parcel Number | Property Address |
|---|---|
| 84D-1250-21-3 | 4701 EWING RD, CASTRO VALLEY 94546-1017 |

| Amounts valid till end of this month | Tax Amounts |
|---|---|
| Tax | 16,117.28 |
| Escape Interest | 0.00 |
| Delinquent Penalties | 1,611.68 |
| Delinquent Cost | 50.00 |
| Redemption Penalties | 5,995.85 |
| Redemption Fee | 15.00 |
| TDL Cost/Fees | 0.00 |
| PLAN Interest/Fees | 0.00 |
| Return Check Fee | 0.00 |
| Net Tax | $23,789.81 |
| Adjustments | 0.00 |
| Prior Payments | 0.00 |
| Total | $23,789.81 |
| Amount Due | $23,789.81 |
| Date Paid | |

### Please select ONE payment option

### Credit Card Option

We accept:   

| Full Payment Option | Amount Due | Convenience Fee | Total Payment |
|---|---|---|---|
| ○ Pay Bill | $23,789.81 | $594.74 | $24,384.55 |

### E-Check Option

| Full Payment Option | Amount Due | | Total Payment |
|---|---|---|---|
| ○ Pay Bill | $23,789.81 | | $23,789.81 |

### Terms and Conditions

**AGREEMENT BETWEEN TAXPAYER AND THE ALAMEDA COUNTY TREASURER-TAX COLLECTOR'S OFFICE CONCERNING PAYMENT OF TAXES ONLINE**

**TERMS AND CONDITIONS**

**Your Bank Account**

If you are paying by e-check (ACH), you can use a valid checking or savings account from any recognized financial institution in the USA. First, check with your bank to make sure they accept electronic debits from the account you choose and to determine if your bank will charge you any fees for this service. Then, just give us your American Banking Association (ABA) number and your bank account number when you make your payment. The ABA routing number is

☐ **By Checking this box I agree to the Terms and Conditions, and Confirm that this is the Account I intend to Pay.**

| Show Tax Bills | | Continue To Pay Contact |
|---|---|---|

Alameda County © 2020 • All Rights Reserved • Legal / Disclaimers • Accessibility